## No. C-814

**Barbara Houle, by and through her Father, Harold Houle v. Adams State College and Trustees of the State Colleges of Colorado**

(547 P.2d 926)

Decided March 29, 1976.

Brian A. Jeffrey, John Kuenhold, for petitioner.

J. D. MacFarlane, Attorney General, Jean E. Dubofsky, Deputy, Edward G. Donovan, Solicitor General, Richard A. Tharp, Assistant, David E. Engdahl, Assistant, for respondents.

*En Banc.*

MR. JUSTICE DAY delivered the opinion of the Court.

This case, one of first impression in Colorado, involves the determination of whether a state college is a landlord within the meaning of the Security Deposit Act, sections 38-12-101 *et seq.*, C.R.S. 1973.

Plaintiff-petitioner was formerly a student and dormitory resident at Adams State College, defendant-respondent. This action was instituted on petitioner's behalf for the return of her $50 dormitory housing deposit which she contends is a "security deposit" within the meaning of the Act. Section 38-12-102(2). Treble damages, costs and attorneys' fees are sought by reason of the college's noncompliance with the procedural requirements of section 38-12-103.

Following a trial in the county court, petitioner was granted all of her requested relief; a judgment in the total amount of $204.80 was entered against respondents. The district court, on appeal, reversed. We affirm.

■ The Security Deposit Act was passed to control the practices of landlords who withhold, without justification, their tenants' damage deposits. The statute does not define the term "landlord" nor does it state what constitutes the "landlord-tenant" relationship. We therefore look to the ordinarily accepted concept of the relationship, and construe the legislative intent not to expand the common law definition of a landlord and a tenant. The district court found — correctly we hold — that the respondent college board of trustees is not a landlord and there was no landlord-tenant relationship involved.

Adams State College is under the control of respondent Trustees, a body corporate with general supervisory powers over Adams State and four other state colleges. Section 23-50-101, C.R.S. 1973 and *Colo. Const.* Art. VIII, Sec. 5(2).

A common sense assessment of the college-student concept militates against petitioner's contention that the relationship of the Trustees to the students is factually indistinguishable from that of landlord-tenant. Petitioner had no choice except to live in the dormitory. Dormitory living involves more than providing a physical place to inhabit. Acclimation to college and attendant social and educational benefits are ingredients of dormitory living. *See Prostrollo v. University of South Dakota*, 507 F.2d 775 (8th Cir. 1974); *Poynter v. Drevdahl*, 359 F.Supp. 1137 (W.D. Mich. 1972); *Pratz v. Lousiana Polytechnical Institute*, 316 F.Supp. 872 (W.D. La. 1970).

Adams State requires students like petitioner to live in the dormitories. A deposit is received, but it also covers other college fees. In addition to supplying room and board, Adams State provides academic, social and counseling activities within its dormitories. These activities are a vital part of a student's educational experience. In *Pratz, supra*, the court stated:

"Thus far, we have seen that an effective system of higher education is one of the highest priority projects of both the federal and State governments. We also have seen that adequate housing, dining and student life facilities,

for all prospective students, are agreed to be a necessary and most vital component of such an educational system. . . ."

The district court's ruling is further supported by authorities from other jurisdictions holding that a dormitory student is not a tenant. *Englehart v. Serena*, 318 Mo. 263, 300 S.W. 268 (1927); *Splawn v. Woodard*, 287 S.W. 677 (Tex. Civ. App. 1926).

In view of our determination that the Act does not apply to respondents, petitioner's other assignments of error require no comment.

Judgment affirmed.

MR. CHIEF JUSTICE PRINGLE dissents.

MR. JUSTICE KELLEY and MR. JUSTICE GROVES do not participate.

MR. CHIEF JUSTICE PRINGLE dissenting:

I most respectfully dissent.

The deposit here in question was made in conjunction with an agreement denominated "application for residence hall housing." The record in this case is clear and undisputed that the deposit was given "to secure the performance of a rental agreement for residential premises . . . ." As such, it falls squarely within the definition of security deposit as set forth in Sec. 38-12-102(2), C.R.S. 1973.

Nowhere does the Rental Security Deposit Act[1] exempt from its provisions education institutions or non-profit corporations. The contract by which the deposit was made was for housing. Every incident of the normal landlord-tenant relationship is present here.

The Director of Housing for the college testified that at the end of the semester, any damages to the room would be deducted from that deposit.

In my view, when the state sets a policy for its citizens then the state itself should be the prime example of compliance with it. The state is not above the law. I do not say the college could not keep the deposit here, for the law certainly allows it for abandonment of the premises. But the state, like every other landlord, must follow the procedures of the law when it wishes to forfeit a security rental deposit.

---

[1] Sec. 38-12-102(2), C.R.S. 1973.