Fred J. JOSEPH, Securities Commissioner for the State of Colorado, Plaintiff–Appellant,

v.

VIATICA MANAGEMENT, LLC; Viatica Fund, an unincorporated business entity; and Glen Ray Gamble, Defendants–Appellees.

No. 01CA1398.

Colorado Court of Appeals, Div. V.

Aug. 1, 2002.

Ken Salazar, Attorney General, Gerald R. Rome, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellant.

Holland & Pagliuca, P.C., Jeffrey S. Pagliuca, Heather R. Hanneman, Denver, Colorado, for Defendants–Appellees.

Opinion by Judge ROY.

Plaintiff, Fred J. Joseph, in his capacity as the Securities Commissioner for the State of Colorado (commissioner), appeals from a judgment in favor of defendants, Viatica Management, LLC, (VML); Viatica Fund, an unincorporated business entity; and Glen Ray Gamble, an owner, officer, director, and agent of the fund. We reverse and remand.

VML offered for sale to investors units in funds that it would establish at intervals following receipt of investor monies. The minimum investment was $25,000, which was the price for one unit. VML was to sell a maximum of 200 units to create a fund of $5,000,000. As it sold units, VML was to create up to five separate funds, each consisting of the monies raised in each ninety-day period from the first offering until the earlier of August 30, 1996, or the sale of all 200 units. Each separate fund then would enter into a management agreement with VML. The investors received a Certificate of Investment as evidence of their ownership in the Viatica Fund.

VML then transferred the funds, pooled together in the Viatica Fund, to Beneficial Assurance, Inc. (BA), its consultant. BA then purchased viatical settlements of life insurance policies from viators on behalf of the Viatica Fund.

A viator is a terminally ill individual, frequently one afflicted with AIDS, who desires to convert the death benefits of a life insurance policy into cash on a discounted basis. The Viatica Fund became the owner and beneficiary of the life insurance policy insuring the viator's life and was to receive the proceeds of the policy upon the viator's death.

The Viatica Fund was to receive fifty percent of the profits upon the death of the viator, and BA the other fifty percent. The "profit" was the death benefit less the discounted purchase price, premiums paid, and administrative expenses. An investor's distribution from the Viatica Fund was based on his or her pro rata interest in the fund.

Only two investors purchased units: defendant Glen Ray Gamble who was involved in promoting the fund, and another. When, because of improvements in the treatment of AIDS, the life insurance contracts did not mature as quickly as contemplated, the other investor contacted the commissioner and alleged misrepresentations and omissions of material facts in the sale of the units.

The commissioner brought this action asserting violations of the Colorado Securities Act (Act) and seeking an injunction pursuant to § 11–51–602, C.R.S.2001, and remedies for civil liability pursuant to § 11–51–604, C.R.S. 2001. The latter claim was dismissed as untimely, and the commissioner did not appeal that decision. Defendants then moved for summary judgment on the ground that the units are not securities for purposes of the Act. The trial court ultimately granted summary judgment on that issue and dismissed the case with prejudice.

## I.

The commissioner contends that the trial court erred in concluding that the units were not securities subject to regulation under the Act. We agree.

An appellate court's review of an order granting a motion for summary judgment is de novo. *See Aspen Wilderness Workshop, Inc. v. Colorado Water Conservation Board,* 901 P.2d 1251 (Colo.1995).

■ Whether an interest or instrument is an investment contract is a question of law, *see Straub v. Mountain Trails Resort, Inc.,* 770 P.2d 1321 (Colo.App.1988), which is also reviewed de novo. *See Colorado State Personnel Board v. Department of Corrections,* 988 P.2d 1147 (Colo.1999).

■ Whether a particular transaction involves a security depends not on the name or the form of the instrument, but on the substantive economic realities underlying the transaction. *See Griffin v. Jackson,* 759 P.2d 839 (Colo.App.1988). The statutory definition of "security" under the Act states, in pertinent part: " 'Security' means any . . . certificate of interest or participation in any profit-sharing agreement; . . . transferable share; *investment contract;* . . . or, in general, any interest or instrument commonly known as a 'security'. . . ." Section 11–51–201(17), C.R.S.2001 (emphasis added). Under Colorado law, a "security" includes an "investment contract" covered under the Securities Act of 1933. *Feigin v. Digital Interactive Associates, Inc.,* 987 P.2d 876 (Colo. App.1999).

The relevant inquiry, therefore, is whether the units in the Viatica Fund qualify as securities under the general category of "investment contracts."

■ An investment contract under the Securities Act of 1933 means a contract, transaction, or scheme by which a person (1) invests his or her money (2) in a common enterprise (3) with the expectation of profits from the efforts of others. *See Securities & Exchange Commission v. W.J. Howey Co.,* 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946); *Feigin v. Digital Interactive Associates, Inc., supra* (applying *Howey* test). These third-party efforts must be significant, that is, essential managerial efforts that affect the success or failure of the enterprise. *See Securities & Exchange Commission v. Glenn W. Turner Enterprises, Inc.,* 474 F.2d 476 (9th Cir.1973).

Defendants appear to concede by their reliance on *Securities & Exchange Commission v. Life Partners, Inc.,* 87 F.3d 536 (D.C.Cir.), *reh'g denied,* 102 F.3d 587 (D.C.Cir.1996), that the purchase of a unit in the Viatica Fund is an investment of money in a common enterprise. And unquestionably there was an expectation of profits. The dispute is whether those profits depended on the efforts of others.

The court in *Life Partners* concluded that there was no, or not sufficient, reliance on the efforts of others and, therefore, the investment vehicle in that case was not an investment contract subject to securities regulation. Defendants argue the first version of the investment vehicle in *Life Partners* is the same as that here. The *Life Partners* court described that version as follows:

In each [version], [the promoter] performed or performs a number of pre-purchase functions: Specifically, *even before assembling the investors,* [the promoter] evaluates the insured's medical condition, reviews his insurance policy, negotiates the purchase price, and prepares the legal documents. The difference among the three versions is that [the promoter] performs ever fewer (and ultimately no) post-purchase functions.

In Version I, . . . [the promoter] could appear, and continue to appear after the

investors had purchased their interests, in an insurance company's records as the owner of a policy; [the promoter] insists, however, that this practice was adopted not because [the promoter] had any continuing entrepreneurial role to play but only at the urging of the insurance companies for their administrative convenience; the investor was at all times the legal owner. Also, once an investor acquired an interest in a policy he could avail himself of [the promoter's] on-going administrative services, which included monitoring the insured's health, assuring that the policy did not lapse, converting a group policy into an individual policy where required, and arranging for resale of the investor's interest when so requested and feasible.

*Life Partners, supra,* 87 F.3d at 539–40 (emphasis added). In later versions of the investment vehicle at issue in *Life Partners,* the investor purchased a direct undivided interest in a viatical settlement.

■ Here, however, the investors purchased a unit of a trust, which then purchased viatical settlements through an agent. The investors' funds were pooled to acquire indirect interests in viatical settlements. In the *Life Partners* investment vehicles, the investor had a direct interest in a viatical settlement even though the promoter was listed as the policy owner in the insurance company records for the convenience of the insurance company. Therefore, contrary to defendants' argument, the investment vehicle in *Life Partners* is not identical to that here.

Further, here, the investors relied entirely on BA's investigation, analysis, selection of the viators and the policies to be acquired, and negotiations of the terms of the acquisitions, all of which were postinvestment, or at least not identified to the investor at the time of the investment. The success or failure of the enterprise thus rested with VML and its agent, BA, and not with the investors themselves. Indeed, the duration of the viator's life alone has the most significant impact on any profit and, therefore, the acceptability of the investment. The estimation of that life expectancy was made by BA.

Moreover, we conclude defendants position is inconsistent with the policies embraced by Colorado's own General Assembly. *See* § 11–51–101(3), C.R.S.2001 (provisions and rules under the Act shall be coordinated with federal acts and statutes to the extent consistent with the purposes of the Act).

One purpose of the Act is to protect investors. The Act is remedial in nature and is to be broadly construed to effectuate its purposes. *See* § 11–51–101(2), C.R.S.2001; *Sauer v. Hays,* 36 Colo.App. 190, 539 P.2d 1343 (1975). In light of the prophylactic and remedial purposes of the Act, and our duty to interpret it broadly, we conclude that *Life Partners* is clearly distinguishable, and we are not persuaded by either the rationale or conclusions reached in that case.

However, we are persuaded by the rationale and conclusions reached in *Siporin v. Carrington,* 200 Ariz. 97, 23 P.3d 92 (Ct.App. 2001). The court in *Siporin* focused on the importance of the offeror's activities in analyzing the insurance policies and the viators' longevity and concluded that the profits investors expect to realize depend almost entirely on the offeror's expertise in choosing the policies to purchase, which in turn depends on the offeror's entrepreneurial and managerial skills.

We thus conclude, as a matter of law, that the units in the Viatica Fund sold by VML constitute investment contracts under the rationale and holding in *Securities & Exchange Commission v. W.J. Howey Co., supra.* Accordingly, they constitute securities governed by the Act, and the trial court erred in determining otherwise.

## II.

■ Defendants contend that the commissioner's argument that the units constituted securities under the *Howey* test was waived because it was not raised below or, alternatively, the trial court's error in that regard was invited by the commissioner's position below. We disagree.

In the trial court, defendants expressly relied on the investment contract analysis in *Life Partners,* but the commissioner argued that defendants' representations to investors established that the units were securities. Thus, the trial court had to address both the

legal effects of defendants' representations and the status of the units as investment contracts and securities under *Howey*. Further, defendants explicitly argued in their reply brief in the trial court that the units were not securities under *Howey*. Because defendants presented this issue to the trial court, which considered and ruled upon it, defendants had adequate notice of the *Howey* issue. Waiver therefore does not apply. *See In re Marriage of Wright*, 841 P.2d 358 (Colo.App.1992)(argument not waived if party has adequate notice of it).

 Additionally, given defendants' representations, the commissioner's assertion that it was unnecessary to conduct an investment contract analysis was not an admission that the units were not investment contracts. Thus there was no invited error. *Cf. Hansen v. State Farm Mutual Automobile Insurance Co.*, 957 P.2d 1380 (Colo.1998)(under doctrine of invited error, a party may not later complain where it injected the error in the case).

### III.

Defendants also argue that the trial court's error in determining the units were not securities was harmless because in any event the commissioner cannot prove a threat of future violations and so cannot obtain injunctive relief. We disagree.

The commissioner's remaining claim for injunctive relief was brought under § 11–51–602(1), C.R.S.2001, which provides as pertinent here:

> Whenever it appears to the securities commissioner upon sufficient evidence satisfactory to the securities commissioner that any person *has engaged in or is about to engage in* any act or practice constituting a violation of any provision of this article ... the securities commissioner may apply to the district court ... to ... *permanently enjoin the act or practice in question* .... (emphasis added)

 In construing Colorado's securities laws, we first look to the plain language of the statute, and we employ fundamental principles of statutory construction. A statute should be construed to give full effect to the intent of the General Assembly. *See Rosen-thal v. Dean Witter Reynolds, Inc.*, 908 P.2d 1095 (Colo.1995).

 Here, the statute's plain language permits the commissioner to obtain a permanent injunction based on past, and not just threatened future, violations of the Act. Further, § 11–51–602(2), C.R.S.2001, permits the commissioner to seek damages, restitution, disgorgement, or other equitable remedies in an action brought under § 11–51–602(1). Thus, the court's error in analyzing the units was not harmless. *See Clark v. Buhring*, 761 P.2d 266 (Colo.App.1988)(error not harmless if different result might have been reached if error had not been made).

The judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.

Judge MARQUEZ and Judge NIETO concur.