2013 CO 7

**Charles Reed CAGLE; Joseph D. Kinlaw; Heartland Energy of Colorado, LLC; Steve Ziemke; Brandon Davis; John Schiffner; Joel Held; Martin Harper; HEI Resources, Inc., f/k/a Heartland Energy, Inc.; Heartland Energy Development Corp.; Reed Petroleum, LLC; D. Deerman Ltd.; and R & J Associates, Inc., Petitioners:**

v.

**MATHERS FAMILY TRUST, William H. Mathers, Myra M. Mathers, Thomas E. Carpenter Trust, Margaret M. Carpenter Trust, Robert Hall, and Gianpaolo Callioni, Respondents**

Supreme Court Case No. 11SC496

Supreme Court of Colorado.

February 4, 2013

Attorneys for Petitioners Charles Reed Cagle; Heartland Energy of Colorado, LLC; HEI Resources, Inc.; Reed Petroleum, LLC; and R & J Associates, Inc.: Shoemaker Ghiselli & Schwartz LLC, Paul H. Schwartz, Andrew R. Shoemaker, Alice Warren–Gregory, Boulder, Colorado.

Attorneys for Petitioner Joel Held: Davis Graham & Stubbs LLP, Thomas P. Johnson Sara P. Bellamy, Denver, Colorado.

Attorney for Petitioner Steve Ziemke: Hogan Lovells U.S. LLP, Jeffrey S. George, Colorado Springs, Colorado.

Attorneys for Petitioners Brandon Davis and Heartland Energy Development Corp.: The Tenenbaum Law Firm: A. Thomas Tenenbaum, George Kreye, Highlands Ranch, Colorado.

Attorney for Petitioners John Schiffner and D. Deerman Ltd.: Robinson Waters & O'Dorisio, P.C.: Otto K. Hilbert, II, Denver, Colorado.

Attorney for Petitioner Martin Harper: Ireland Stapleton Pryor & Pascoe, PC, Mark E. Haynes, Denver, Colorado.

Attorneys for Respondents: Pryor Johnson Carney Karr Nixon, P.C., Irving G. Johnson, John R. Paddock, Jr., Elizabeth C. Moran, Marta M. Jucha, Patrick A. Singer, Greenwood Village, Colorado.

Attorneys for Amicus Curiae The Colorado Securities Commissioner: John W. Suthers, Attorney General, Alexander C. Reinhardt, Assistant Solicitor General, Russell B. Klein, First Assistant Attorney General, Denver, Colorado.

Attorneys for Amicus Curiae North American Securities Administrators Association, Inc.: Lathrop & Gage LLP, Donald E. Lake, III, Thomas D. Leland, Denver, Colorado.

CHIEF JUSTICE BENDER delivered the Opinion of the Court.

¶ 1 In this appeal, we review a court of appeals decision reversing the trial court's grant of a motion to dismiss based on a forum selection clause in a sales contract. *Mathers Family Trust v. Cagle,* —— P.3d ——, 2011 WL 1797222 (Colo.App.2011).

¶ 2 The defendants, through cold calls, sold the plaintiffs shares in oil and gas joint ventures in Texas, Alabama, and Mississippi. The plaintiffs all signed agreements with clauses stating that the courts in Dallas County, Texas, "shall have exclusive jurisdiction" to hear any claims or disputes "arising from or relating to" the agreements. When the ventures lost money, the plaintiffs sued in Colorado, raising violations of the Colorado Securities Act (CSA)[1] as well as the Vermont, California, and Illinois securities acts and also various common-law claims. The defendants moved to dismiss all the claims, arguing that the forum selection clauses in the agreements required all lawsuits to be brought in Texas. The plaintiffs argued that the clauses were void because they were unenforceable on public policy grounds.

¶ 3 The trial court granted the defendants' motion to dismiss, ruling that the forum selection clauses did not violate Colorado public policy and were enforceable. In support of this ruling, the trial court concluded that the anti-waiver provision in the CSA, section 11–51–604(11), C.R.S. (2012), which prohibits waiving compliance with any other provision of the CSA, did not embody a public policy that prohibited a forum selection clause. The plaintiffs appealed, and, on appeal, the court of appeals reversed the trial court. The court of appeals held that the CSA anti-waiver provision voided the forum selection clauses because the anti-waiver provision mandates that a plaintiff seeking relief under the CSA be able to sue in Colorado.

¶ 4 Upon analysis, we construe the CSA and conclude that it does not express a strong public policy voiding forum selection clauses. Because the CSA requires coordination with the federal securities statutes, we find persuasive federal caselaw that analyzes the federal securities laws and that concludes that their anti-waiver provisions do not void a forum selection clause. We reason that the CSA anti-waiver provision differs from other anti-waiver provisions in Colorado statutes where we have determined the anti-waiver provision to bar suit in other jurisdictions. We hold that neither Colorado public policy nor the anti-waiver provision in the CSA voids a forum selection clause in this contract. Hence, we reverse and remand this case to the court of appeals with instructions to return it to the trial court for reinstatement of the trial court's grant of the defendants' motion to dismiss.

## I. Facts and Procedural History

¶ 5 The plaintiffs, residents of Vermont, California, and Illinois, all bought shares in joint ventures from defendant HEI Resources, Inc. HEI was incorporated in Texas and based in Colorado. The individual defendants, except Joel Held, the lead securities law attorney for the joint ventures, all controlled some portion of HEI or of one of the other defendant companies, all of which had some connection to HEI. Employees of HEI cold-called the plaintiffs offering them

1. §§ 11–51–101 to –908, C.R.S. (2012).

interests in oil and gas ventures in Alabama, Mississippi, and Texas. Although all of the plaintiffs were sophisticated investors, two were over eighty. The defendants told the plaintiffs that they could expect high returns from investments in the joint ventures. The defendants told one plaintiff that he could expect returns up to twenty times his initial investment. They falsely told some plaintiffs that the defendants' success rate in previous joint ventures was eighty to ninety percent, and that the defendants had been successful with the previous seven wells they drilled.

¶ 6 Each plaintiff invested in the joint ventures, and each plaintiff signed an Application Agreement and a Joint Venture Agreement. Both agreements contained a forum selection clause designating Dallas County, Texas, as the only forum for any lawsuit resulting from the agreement, and a choice of law clause stating that Texas law applied to any claims. The Application Agreement read:

> Applicable Law. This Agreement will be construed according to the laws of the State of Texas, and is performable in the city of Dallas, Dallas County, Texas. The Courts located in the State of Texas, state or federal, shall have exclusive jurisdiction to hear and determine all claims, disputes, controversies and actions arising from or relating to this Application Agreement and any of its terms of provisions, or to any relationship between the parties hereto, and venue shall be solely in the courts located in Dallas County, Texas. The undersigned expressly consents and submits to the jurisdiction of said courts and to venue being in Dallas County, Texas.

The Joint Venture Agreement contains similar wording. Contrary to the defendants' sales pitches, the plaintiffs lost substantial amounts of money on the joint ventures. The plaintiffs' losses ranged from $445,097 to $1.1 million.

¶ 7 The plaintiffs then sued the defendants in Colorado, bringing claims under the CSA and the Vermont, Illinois, and California se-

curities acts as well as claims for common-law fraud, concealment, breach of fiduciary duty, negligence, and misrepresentation,[2] all under Colorado law, and civil theft under section 18–4–405, C.R.S (2012). The defendants filed a motion to dismiss claiming that the plaintiffs' Colorado lawsuit was in violation of the forum selection clauses in the Application Agreement and Joint Venture Agreement. The plaintiffs argued that the forum selection clauses were unreasonable, that they were fraudulently induced, and that they were inconsistent with the public policy purposes of the CSA and were therefore unenforceable.

¶ 8 The trial court granted the defendants' motion to dismiss pursuant to the forum selection clauses. It concluded that it did not have jurisdiction to hear the case because the forum selection clauses were enforceable and the parties had agreed that Texas courts had exclusive jurisdiction to hear any disputes arising from the contract. In support of this conclusion, the trial court found that the forum selection clauses were not unreasonable, the clauses were not fraudulently obtained, and the plaintiffs had failed to show that the forum selection clauses violated public policy. The trial court also construed the choice of law clauses in the two agreements and found the clauses enforceable.

¶ 9 On appeal, the court of appeals held that the forum selection clauses conflicted with the public policy expressed in the CSA and its anti-waiver provision and were therefore void. The court of appeals reversed the trial court's grant of the defendants' motion to dismiss. It did not address the enforceability of the choice of law clauses because its decision on the forum selection clauses resolved the case.

¶ 10 The defendants then petitioned this court to review the court of appeals' decision. We granted certiorari on the issue of whether Colorado public policy or the anti-waiver provision in the CSA voids the forum selection clauses. [3]

---

**2.** The plaintiffs also claimed misrepresentation under Texas law.

**3.** We granted certiorari to review the following issue:

> Whether Colorado public policy or the anti-waiver provision of the Colorado Securities Act, C.R.S. § 11–51–604(11), voids forum selection clauses in securities contracts.

## II. Preliminary Matters

¶ 11 Before analyzing the issue presented, we first give some background on forum selection clauses as well as the effect of a trial court's dismissal based on a forum selection clause. We then discuss the standard under which we review such a dismissal.

## Forum Selection Clauses

¶ 12 A forum selection clause is a contractual provision agreed to by private parties that constitutes the parties' agreement as to the place of the action where the parties will bring any litigation related to the contract. Restatement (Second) of Conflict of Laws § 80 (1971); 14D Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 3803.1 (3d ed.1998). The United States Supreme Court held forum selection clauses presumptively enforceable in *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 3–5, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). The Court stated that "such clauses are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *Id.* at 10, 92 S.Ct. 1907. This conclusion, the Court stated, followed the prevailing trend in the law to honor the parties' choice of forum unless that choice was unfair or unreasonable. *Id.*; see Restatement (Second) of Conflict of Laws § 80. The Court held that a forum selection clause should control unless the party seeking to void the clause shows (1) that the clause was unreasonable and unjust; (2) that it was the product of fraud or overreaching; or (3) that enforcement of the clause would contravene a strong public policy of the forum in which suit is brought. *Bremen*, 407 U.S. at 15, 92 S.Ct. 1907.

¶ 13 No Colorado supreme court decision has explicitly adopted *Bremen's* holding that forum selection clauses are presumptively valid unless they are unreasonable, fraudulently induced, or against public policy. No Colorado case applies *Bremen* to the CSA, although the court of appeals has analyzed forum selection clauses under *Bremen* in other contexts.

¶ 14 The common view is that forum selection clauses should be enforced unless they fall within one of the three exceptions in *Bremen*. 14D Wright & Miller, *Federal Practice & Procedure* § 3803.1 (citing the "substantial number" of cases holding that a forum selection clause is presumed valid); Restatement (Second) of Conflict of Laws § 80. The vast majority of cases, including every Colorado court of appeals case decided since *Bremen*, treats forum selection clauses as presumptively enforceable. *See, e.g., ABC Mobile Sys., Inc. v. Harvey*, 701 P.2d 137, 139 (Colo.App.1985); *Excell, Inc. v. Sterling Boiler & Mech., Inc.*, 106 F.3d 318, 320 (10th Cir.1997) (stating there are no "material discrepancies" between *Bremen's* treatment of forum selection clauses and Colorado law's treatment of forum selection clauses).

¶ 15 While a federal court has the option of transferring a case to another federal court in the proper forum under 28 U.S.C. § 1404, a state trial court that finds a forum selection clause enforceable and grants a motion to dismiss can only dismiss the case so that the plaintiff may re-file it in the specified forum. *Compare Barton v. Key Gas Corp.*, No. 05–CV–01856–REB–PAC, 2006 WL 2781592, at *3 (D.Colo. Sept. 26, 2006) (not reported in F.Supp.2d) (finding forum selection clause enforceable in a securities case and transferring the case to the United States District Court for the District of Kansas) with *Adams Reload Co. v. Int'l Profit Assocs., Inc.*, 143 P.3d 1056, 1061 (Colo.App.2005) (affirming the trial court's finding that a forum selection clause was enforceable and upholding the trial court's grant of a motion to dismiss); *see also* 14D Wright & Miller, *Federal Practice & Procedure* § 3803.1 (stating that dismissal is the only remedy if a court cannot transfer venue).

## Standard of Review

¶ 16 Contract law governs the issues relating to the interpretation and enforcement of a forum selection clause. *ABC Mobile Sys.*, 701 P.2d at 140; *K & V Scientific Co. v. Bayerische Motoren Werke Aktiengesellschaft ('BMW')*, 314 F.3d 494, 497 (10th Cir.2002). The standard of review for the interpretation of contract terms is de

novo. *B & B Livery, Inc. v. Riehl*, 960 P.2d 134, 136 (Colo. 1998). We therefore review de novo a trial court's grant of a motion to dismiss pursuant to a forum selection clause.

### III. Analysis

¶ 17 We first examine the language of the CSA, which specifies that the CSA coordinates with federal securities law. We then examine Colorado public policy as expressed in the CSA and in anti-waiver provisions in other Colorado statutes to determine if Colorado public policy requires voiding the forum selection clause in this case.

### A.

¶ 18 Because Colorado appellate courts have followed *Bremen* in forum selection cases[4] and because the parties do not contest that *Bremen* applies here, we follow *Bremen's* holding that a forum selection clause is presumptively valid unless it is unreasonable, fraudulently induced, or against public policy. We construe the forum selection clause in this case in light of the language and purpose of the CSA and analyze whether the forum selection clause is against the public policy expressed in the CSA.[5]

¶ 19 First, we turn to the language of the CSA and its coordination with federal precedent. The CSA states that "[t]he provisions of this article . . . shall be coordinated with the federal acts and statutes to which references are made in this article . . . to the extent coordination is consistent with both the purposes and the provisions of this article." § 11–51–101(3). "Although we have previously held that federal precedent is persuasive in construing similar language in our securities laws, we should first look to the plain language of the controlling statutes under our law." *Rosenthal v. Dean Witter Reynolds, Inc.*, 908 P.2d 1095, 1100 (Colo.

1995) (internal citation omitted). However, "insofar as the provisions and purposes of our statute parallel those of the federal enactments, such federal authorities are highly persuasive." *Lowery v. Ford Hill Inv. Co.*, 192 Colo. 125, 129–30, 556 P.2d 1201, 1204 (1976). The "hallmark" of both state and federal securities regulation is that courts pay close attention to the facts of each case and the commercial realities of each securities offering. *Id.* at 130, 556 P.2d at 1205.

¶ 20 The CSA applies to any sale of securities taking place in Colorado irrespective of where the buyers and sellers are located or incorporated. See § 11–51–102.[6] The purpose of the CSA is "to protect investors and maintain public confidence in securities markets while avoiding unreasonable burdens on participants in capital markets." § 11–51–101(2). The CSA contains an anti-waiver provision that voids any private agreements that waive compliance with the CSA:

> Any condition, stipulation, or provision binding any person acquiring or disposing of any security to waive compliance with any provision of this article or any rule or order under this article is void.

§ 11–51–604(11). The federal Securities Act of 1933 contains an anti-waiver provision with nearly identical language:

> Any condition, stipulation, or provision binding any person acquiring any security to waive compliance with any provision of this subchapter or of the rules and regulations of the Commission shall be void.

15 U.S.C. § 77n (2012).

¶ 21 The U.S. Supreme Court has extended *Bremen's* reasoning to securities law. See *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 518–19, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974) (applying *Bremen* to an arbitration clause in a securities case). Although the

---

4. *See, e.g., ABC Mobile Sys.*, 701 P.2d at 139; *Adams Reload*, 143 P.3d at 1060.

5. In this case, the arguments center on the third exception to *Bremen's* presumption that forum selection clauses are enforceable. Although the plaintiffs argued the other two exceptions below that the clauses' enforcement was unreasonable and they were obtained through fraud the plaintiffs do not raise those arguments with this court.

6. Most states' securities laws have similar provisions. 10 Louis Loss & Joel Seligman, Securities Regulation 5080–90 (3d ed. 1996) (describing reach of most states' securities laws); see also, e.g., Vt. Stat. Ann. tit. 9, § 5610; 815 Ill. Comp. Stat. 5/13 (2012); Cal. Corp. Code §§ 25017, 25110 (West 2012).

Court has not analyzed the enforceability of a forum selection clause in connection with 15 U.S.C. § 77n, the Court has analyzed *Bremen's* public policy exception along with section 77n and concluded that section 77n does not void an arbitration clause. *Rodriguez de Quijas v. Shearson/Am. Express, Inc.* 490 U.S. 477, 482, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989). The Court reasoned that arbitration clauses were "in effect, a specialized kind of forum-selection clause" and held that they should not be prohibited under section 77n because arbitration clauses did not undermine a substantive right under the Securities Act and parties did not waive compliance with the Securities Act by agreeing to an arbitration clause. *Id.* at 483, 109 S.Ct. 1917 (quoting *Scherk,* 417 U.S. at 519, 94 S.Ct. 2449).

¶ 22 Federal courts, following the reasoning in *Rodriguez,* have uniformly held that 15 U.S.C. § 77n does not void forum selection clauses. *See, e.g., Haynsworth v. The Corp.,* 121 F.3d 956, 960 (5th Cir.1997) (referring to the "chorus of authority" from other federal circuit courts holding that the anti-wavier clause in the Securities Act does not render a forum selection clause void); *Roby v. Corp. of Lloyd's,* 996 F.2d 1353, 1366 (2d Cir.1993) (holding that a forum selection clause requiring that investors file suit in England was not void); *Bonny v. Soc'y of Lloyd's,* 3 F.3d 156, 162 (7th Cir.1993); *Riley v. Kingsley Underwriting Agencies, Ltd.,* 969 F.2d 953, 960 (10th Cir.1992).

¶ 23 Despite this uniform line of federal caselaw, the plaintiffs and amici argue that we do not have to follow federal law in this case because the language of the CSA and Colorado appellate precedent show intent to depart from federal law. To analyze this contention, we first examine the language of the CSA.

¶ 24 Section 11–51–101(3) states that the CSA "shall be coordinated" with the applicable federal acts and statutes to which references are made in the article. The CSA is replete with references to the federal securities acts and coordinates the CSA with similar provisions in the federal acts.[7] These references show a consistent statutory scheme coordinating the CSA with the federal acts. In addition, the wording of the CSA's anti-waiver clause is nearly identical to that of the federal anti-waiver clause. The purposes of the federal securities acts are also essentially the same as those of the CSA. *Compare* § 11–51–101(2) (The purpose of the CSA is "to protect investors and maintain public confidence in securities markets while avoiding unreasonable burdens on participants in capital markets.") with *Pinter v. Dahl,* 486 U.S. 622, 638, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988) (stating that the purpose of the federal securities acts is to protect investors).

¶ 25 The plaintiffs and amici contend that despite this language, Colorado precedent shows that Colorado courts depart from federal securities law when construing the CSA. The plaintiffs and amici rely on a court of appeals decision in which the court concluded that it was not controlled by a federal circuit court decision in determining whether shares in an investment fund constitute a security. *Joseph v. Viatica Mgmt., LLC,* 55 P.3d 264, 267 (Colo.App.2002). The federal case concerned shares in a similar investment fund and held that those shares were not securities subject to federal securities regulation. *SEC v. Life Partners, Inc.,* 87 F.3d 536, 549 (D.C.Cir.1996). The court of appeals in *Viatica* concluded that, even though the CSA

---

7. *See, e.g.,* § 11–51–201 (coordinating definitions with definitions in federal acts); § 11–51–303(1) (allowing securities registered under the Securities Act of 1933 to be registered in Colorado by coordination); § 11–51–307(1)(f) (exempting securities registered under the Securities Exchange Act of 1934 from requirements in §§ 11–51–301 and –305 requiring Colorado registration and approval of sales literature); § 11–51–308(1)(b)(III) (exempting transactions from requirements in §§ 11–51–301 and –305 requiring Colorado registration and approval of sales literature if the transaction involves securities registered under the Securities Exchange Act of 1934); § 11–51–311 (coordinating exemptions in the CSA with exemptions for securities and transactions under the federal securities acts "[i]n furtherance of the policy stated in section 11–51–101(3)"); § 11–51–402(1)(a) (exempting broker-dealers from Colorado license requirements if they are registered under the Securities Exchange Act of 1934 and have no place of business in Colorado).

requires coordination with federal law, it did not have to follow *Life Partners,* and it held that the investments before it were securities despite their similarity to the *Life Partners* investments. *Viatica,* 55 P.3d at 267. The court of appeals noted that the *Viatica* investors had less control over those investments than the *Life Partners* investors had, and the court determined that this difference made the investments "clearly distinguishable." *Id.*

¶ 26 Turning to this argument, we note that *Viatica* analyzed the investments before it and concluded that those investments were securities, and also concluded that it was not bound by *Life Partners,* because the *Viatica* investments differed from the *Life Partners* investments. *Viatica,* 55 P.3d at 267. The court's conclusion that the investments before it were similar, but not identical, to investments in *Life Partners* and therefore were securities does not support a generalization that a Colorado court need not follow federal securities cases. Rather, *Viatica* exemplifies the premise that courts pay close attention to the facts of each securities case and take into account the "substantive economic realities underlying the transaction." *Id.* at 266; *see also Lowery,* 192 Colo. at 130, 556 P.2d 1201 at 1205.

¶ 27 The language of the CSA shows the legislature's intent that Colorado securities law be coordinated with federal securities law, as evidenced by the wording of section 11–51–101(3). Our precedent also shows intent to coordinate Colorado securities law with federal securities law. *Viatica* is distinguishable and its holding does not contradict this intent. Hence, we conclude that we must construe the CSA to coordinate with the federal securities acts, and we follow the reasoning of federal courts that have analyzed a forum selection clause in conjunction with the anti-waiver provision in the federal securities laws.

### B.

¶ 28 We next analyze whether either the language of the CSA or Colorado appellate precedent embodies a public policy requiring that litigants be able to bring CSA claims in a Colorado court. If so, a forum selection clause would violate this public policy and would fall under *Bremen's* third exception. We first construe language in the CSA creating a cause of action for CSA violations, and then we consider precedent analyzing anti-waiver provisions in other Colorado statutes.

¶ 29 Several provisions in the CSA contain language concerning the private right of action to bring lawsuits for violations of the CSA. For example, section 11–51–604(7)–(10) contains language allowing buyers of securities to bring actions in court against sellers who violate the CSA. Section 11–51–604(7) states that a "cause of action" survives the death of a party, and sections 11–51–604(8), (9), and (10) refer to those who "may sue" and to the basis for a "suit." Section 11–51–706(1) requires those offering securities for sale in Colorado to file with the securities commissioner consent to service of process in Colorado, and section 11–51–706(4) states that any violation of the CSA "shall be deemed to constitute the transaction of business within this state for the purpose of section 13–1–124, C.R.S.," Colorado's long-arm statute.

¶ 30 The plaintiffs contend that the provisions in section 11–51–604 create a requirement that suits under the CSA be brought in Colorado courts. They argue that the provisions in section 11–51–706 show a legislative intent to require investors to sue in Colorado courts because the provisions compel violators to accept Colorado's jurisdiction.

¶ 31 The language in section 11–51–604 provides for a "cause of action" and states that buyers "may sue." The word "may" denotes a grant of discretion and is usually permissive. *Jefferson Cnty. Bd. of Equalization v. Gerganoff,* 241 P.3d 932, 937 (Colo.2010); *People v. Dist. Court,* 713 P.2d 918, 922 (Colo.1986). The phrase "may sue" is permissive, not mandatory, and allows but does not require that CSA violations be litigated in Colorado. The phrase "cause of action" in section 11–51–604 creates the option to sue in court, but it does not require that the court be located in Colorado.

¶ 32 Section 11–51–706 creates a mechanism requiring out-of-state sellers of

securities to consent to jurisdiction in Colorado and brings them within the reach of Colorado's long-arm statute, section 13–1–124. Section 11–51–706(1) requires that sellers of securities in Colorado agree to accept Colorado's jurisdiction if a buyer chooses to litigate in Colorado, but it does not require buyers to file suit in Colorado. Section 11–51–706(4) brings any violation of the CSA within the reach of the long-arm statute, which grants Colorado personal jurisdiction over anyone who violates the CSA. However, section 11–51–706 does not grant Colorado exclusive jurisdiction over violations of the CSA and does not require that a violation of the CSA be litigated in Colorado. We conclude that the language of the CSA does not show evidence of a strong public policy that would fall within the third *Bremen* exception and require voiding of the forum selection clauses here.

¶ 33 The plaintiffs argue that Colorado appellate precedent analyzing anti-waiver clauses in different statutes creates a public policy against forum selection clauses. Hence, we next consider three previous Colorado appellate decisions construing anti-waiver clauses in two other statutes. The first statute, the Colorado Wage Claim Act (CWCA),[8] contains an anti-waiver provision voiding agreements that waive an employee's rights under the statute:

> Any agreement, written or oral, by any employee purporting to waive or to modify such employee's rights in violation of this article shall be void.

§ 8–4–121. We held that an arbitration provision in an employee's contract was void because a provision in the CWCA stating that "any person … may file suit in any court" reflected the legislature's intent to allow Colorado employees to recover past due wages in court, and the anti-waiver provision in section 8–4–121 implemented this policy by "protecting employees against contractual waiver or modification" of "substantive and procedural rights." *Lambdin v. Dist. Court,* 903 P.2d 1126, 1130 (Colo.1995) (discussing § 8–4–110(2)). We concluded that the U.S. Supreme Court's decision in

*Rodriguez,* which held that an arbitration clause in a contract was enforceable despite the anti-waiver provision in the federal Securities Act of 1933, did not require us to hold that the arbitration clause in *Lambdin* was enforceable. *Id.* at 1131 (citing *Rodriguez,* 490 U.S. at 482, 109 S.Ct. 1917). *Rodriguez* drew a distinction between the substantive rights in the Securities Act, such as the allocation of the burden of proof, and the procedural rights in the Securities Act, such as the grant of concurrent jurisdiction in the state and federal courts and the existence of nationwide service of process. 490 U.S. at 481–82, 109 S.Ct. 1917. The Court concluded that 15 U.S.C. § 77n, prohibiting waivers of "compliance" with the provisions of the Securities Act, did not prevent waivers of procedural provisions. *Id.* at 482, 109 S.Ct. 1917. In *Lambdin,* we concluded that the Securities Act, which "precluded waiver of substantive provisions under the act but not procedural provisions," differed from the CWCA because the CWCA prohibited the waiver of both substantive and procedural rights. 903 P.2d at 1131. A division of the court of appeals later held, without much analysis, that the CWCA anti-waiver provision voided a forum selection clause that required an employee to litigate claims against his employer in New York. *Morris v. Towers Fin. Corp.,* 916 P.2d 678, 679 (Colo.App.1996). The court of appeals read the statement in section 8–4–110 that a party "may file suit in *any* court having jurisdiction over the parties" to bar the forum selection clause because *Lambdin* implied that parties could file suit in any jurisdiction and thus could not limit actions to one jurisdiction through a forum selection clause. *Id.* (emphasis added).

¶ 34 We considered a different anti-waiver provision in the Wrongful Withholding of Security Deposits Act (WWSDA).[9] *Ingold v. AIMCO/Bluffs, L.L.C. Apartments,* 159 P.3d 116, 119 (Colo.2007). The WWSDA makes a landlord who willfully retains a security deposit liable for a tenant's "attorneys' fees and court costs" and gives the landlord the burden of proof in a court action brought by a

---

8.  §§ 8–4–101 to –123, C.R.S. (2012).

9.  §§ 38–12–101 to –104, C.R.S. (2012).

tenant. § 38–12–103(3)(a), (b). Its anti-waiver provision voids agreements that waive the benefits for tenants in the WWSDA:

> Any provision, whether oral or written, in or pertaining to a rental agreement whereby any provision of this section for the benefit of a tenant or members of his household is waived shall be deemed to be against public policy and shall be void.

§ 38–12–103(7). We held that these two sections of the WWSDA created a statutory right of action *"in a legal proceeding* [that] cannot be limited or waived by an arbitration agreement." *Ingold,* 159 P.3d at 123 (emphasis in original).

¶ 35 The plaintiffs contend that the CSA, like the CWCA and the WWSDA, creates both substantive and procedural rights. The CSA's anti-waiver provision, they argue, thus voids any out-of-state forum selection clauses based on *Lambdin, Morris,* and *Ingold.* To analyze this contention, we examine the purposes and language of the CWCA, the WWSDA, and the CSA.

¶ 36 We begin our analysis of these three anti-waiver provisions by examining the purposes of the statutes. The CWCA is "designed to require employers to make timely payment of wages … and to provide adequate judicial relief when employers fail to pay wages when due." *Cusimano v. Metro Auto, Inc.,* 860 P.2d 532, 533 (Colo.App. 1992); *see also Lambdin,* 903 P.2d at 1129. "[A] state in which a party is domiciled has an interest in rules it promulgates to protect its residents against the unfair use of superior bargaining power." *Dresser Indus., Inc. v. Sandvick,* 732 F.2d 783, 786 (10th Cir. 1984) (holding that Colorado law should apply to an employment contract signed by a Colorado employee who worked in Colorado). The WWSDA "was passed to control the practices of landlords who withhold, without justification, their tenants' damage deposits." *Houle v. Adams State Coll.,* 190 Colo. 406, 407, 547 P.2d 926, 927 (1976). The WWSDA is "designed to assist tenants in vindicating their legal rights and to equalize the disparity in power which exists between landlord and tenant in conflicts over such relatively small sums." *Martin v. Allen,* 193 Colo. 395, 396, 566 P.2d 1075, 1076 (1977). Colorado

has an interest in regulating landlord-tenant relations throughout the state so state residents have an expectation of consistency. *Town of Telluride v. Lot Thirty-Four Venture, L.L.C.,* 3 P.3d 30, 38 (Colo.2000).

¶ 37 The CSA, unlike the CWCA and the WWSDA, is not designed for the protection of state residents alone. Its purpose is to protect investors and maintain confidence in the public securities markets. *See* § 11–51–101(2). Those investors do not have to live in Colorado to avail themselves of the protections of the CSA because it applies to any securities transaction taking place in Colorado irrespective of where the buyer and seller live. *See* § 11–51–102. Where Colorado has a strong interest in making sure a Colorado employee or a Colorado renter can seek relief in a Colorado court, the state does not have the same strong interest in protecting out-of-state investors, like the plaintiffs here, who invested in out-of-state investments in a national market.

¶ 38 The language of the three anti-waiver provisions also reflects their different purposes. The CWCA voids all agreements "purporting to waive or to modify such employee's *rights."* § 8–4–121 (emphasis added). The WWSDA voids agreements that waive "any provision of this section for the *benefit* of a tenant or members of his household." § 38–12–103(7) (emphasis added). The CSA voids agreements that "waive *compliance* with any provision of this article." § 11–51–604(11) (emphasis added). The CSA's anti-waiver provision is almost identical to 15 U.S.C. § 77n, which the U.S. Supreme Court construed in *Rodriguez* to void agreements that waived substantive rights but not those that waived procedural rights.

¶ 39 Here, the parties' agreement to file lawsuits related to the agreements in Texas waives only a procedural right. The defendants concede that the CSA applies to the plaintiffs' Colorado securities claims. The plaintiffs could bring their CSA claims in a Texas court because states routinely apply the securities laws of other states. 10 Loss

& Seligman, *Securities Regulation,* at 5090.[10] The plaintiffs thus would still be able to pursue their Colorado securities claims in a Texas court as specified by the forum selection clause. They did not waive the substantive protections in the CSA, and the CSA anti-waiver clause does not prohibit waiver of the procedural right to file suit in Colorado and thus did not void the forum selection clause in this case.

¶ 40 The CSA has a different purpose than the CWCA and the WWSDA. The CWCA and the WWSDA protect people domiciled in Colorado and concern matters employment and landlord-tenant relationships in which Colorado has a strong interest. The CSA, in contrast, protects both Colorado and out-of-state investors, like the plaintiffs here, and concerns the regulation of investments that include out-of-state investments. Because the language of the CSA anti-waiver provision is nearly identical to that of the federal securities anti-waiver provision and does not contain the language preventing waiver of "rights" and "benefits" that the CWCA and WWSDA contain, it only prohibits the waiver of substantive rights. Here, the plaintiffs did not waive their substantive rights under the CSA because they can pursue their CSA claims in a Texas court. We therefore conclude that *Lambdin, Morris,* and *Ingold* do not require that we hold that the forum selection clauses in this case are void.

## C.

¶ 41 The plaintiffs and amici argue that we must consider the effect of the choice of law clause in order to determine if the forum selection clause should be enforced. While a forum selection clause determines the place where a suit related to a contract can be brought, a choice of law clause determines the law that will govern the parties' contractual rights and duties. Restatement (Second) of Conflict of Laws § 187 (1971). Requiring a court to consider a choice of law clause at the same time as a forum selection clause forces a court to attempt to determine the potential outcome of the case under the chosen law at the outset of the litigation. *Swenson v. T–Mobile USA, Inc.,* 415 F.Supp.2d 1101, 1105 (S.D.Cal.2006). Because it is impossible to determine the outcome and merits of this case at this procedural stage, we do not reach the plaintiffs' contentions regarding the choice of law clause.

## IV. Conclusion

¶ 42 For the reasons stated above, we reverse the court of appeals. We remand this case to the court of appeals with instructions to return the case to the district court to reinstate its order granting the motion to dismiss.

---

**10.** *See also Huffington v. T.C. Group, LLC,* 637 F.3d 18, 24–25 (1st Cir.2011) (holding that anti-waiver provision in Massachusetts securities laws did not void a forum selection clause requiring litigation in Delaware because Delaware courts would apply Massachusetts law and "Massachusetts securities law claims are not uncommonly brought in other jurisdictions"); *In re Infocure Sec. Litig.,* 210 F.Supp.2d 1331, 1362 (N.D.Ga. 2002) (holding that choice of law clause specifying Georgia law did not preclude the court from applying the securities laws of North Carolina, South Carolina, Michigan, and Florida); *Barnebey v. E.F. Hutton & Co.,* 715 F.Supp. 1512, 1533–36 (M.D.Fla.1989) (concluding that there was no conflicts of law problem in applying multiple states' securities laws to the same transaction); Louis Loss, *Commentary on the Uniform Securities Act* 158 (1976) (commentary to section 414(a)-(f) of the Uniform Securities Act, describing how an offer made by a buyer in one state to a seller in another will trigger the laws of both states).