428 F.2d 926
 Fed. Sec. L. Rep. P 92,718
Richard D. AHRENS and Jeanne Ahrens, his wife, et al., Appellants,
v.
AMERICAN-CANADIAN BEAVER CO., Inc., a corporation, Mark L.
Weaver, Sally D. Weaver, Van R. Weaver, Ted L.
Weaver, Jerry Milligan, Elizabeth
Milligan, Appellees.
 No. 428-69.
 United States Court of Appeals, Tenth Circuit.
 July 15, 1970.
 
 Alfred J. Schweppe, Seattle, Wash., (Rawlings, Roberts & Black, and Richard C. Dibblee, Salt Lake City, Utah, and Schweppe, Doolittle, Krug & Tausend, and Kenneth E. Rekow, Seattle, Wash., with him on the brief), for appellants.
 Everett E. Dahl, Midvale, Utah, for appellees.
 Before MURRAH, Senior Circuit Judge, and SETH and HOLLOWAY, Circuit judges.
 SETH, Circuit Judge.
 
 
 1
 This is an action commenced under the Securities Exchange Act of 1934 (15 U.S.C. 78j(b)) and the Securities Act of 1933 (15 U.S.C. 77q(a)), by the purchasers of 'beaver contracts.'
 
 
 2
 The complaint alleges that false and untrue representations were made to the plaintiffs by the defendants, or some of them, and by their agents, in solicitations made for the sale of investments in unregistered contracts relating to the purchase, care, and resale of live beavers. The case was tried to a jury, which found for the defendants, and the plaintiffs have taken this appeal.
 
 
 3
 The plaintiffs assert that the trial court committed errors by making unfair comments while instructing the jury, by submitting to the jury the question of whether or not the contracts were securities, by failing to instruct on the responsibility of the defendants for representations made by their agents, and by giving erroneous instructions upon promissory statements or representations.
 
 
 4
 The record shows that the plaintiffs were solicited by representatives or salesmen of the defendants or some of their organizations to purchase contracts wherein they would become the owners of a pair or several pairs of live beavers which would be kept, cared for, raised and bred on so-called beaver ranches operated or selected by the defendants or their representatives. The offspring would also be so cared for. The purchasers would own the beavers but the sellers could make exchanges from time to time.
 
 
 5
 The representations to the plaintiffs included statements that there was a very large demand for beavers for breeding stock and otherwise, and the plaintiffs would have no trouble in disposing of the beavers which were raised. Other representations related to the source of the beavers to be sold initially to the plaintiffs, how fast the beavers would reproduce, and the nature of the care that would be given to them on the beaver ranches. The plaintiffs proved that in reliance on these representations they purchased some $75,000 worth of 'beaver contracts.' The plaintiffs assert that the beavers were not as represented, that the rate of reproduction of defendants' beavers in the past was very much lower than represented, and that there was no market for beavers that were raised. Further, they alleged that when the beavers were tendered back to the Weavers or their organization, they would not repurchase them nor would they refund any of the purchase price.
 
 
 6
 The defendants do not deny the fact that the United States mails were used in the sale of the contracts.
 
 
 7
 As indicated above, the plaintiffs assert that the trial court was in error and that great prejudice resulted to them when it was instructing the jury and describing the nature of the cause of action or claims of false statements which the plaintiffs had asserted had been made to them. The trial judge, in so describing the claims of the plaintiffs, stated: 'In other words, the Weavers were lying in their teeth. That is the kind of a claim this is.' The plaintiffs assert that this description to the jury of the nature of the claims was at least incorrect and served to prejudice the jury and to substantially increase the burden the plaintiffs were required to meet in their proof.
 
 
 8
 We must agree with these assertions made by the plaintiffs. It is difficult to evaluate the degree or the amount that the plaintiffs' burden was increased by the above statement, but it is apparent that it was increased above the ordinary preponderance of the evidence. The term, 'lying in their teeth,' as used by the trial judge does not seem to have an established legal meaning, at least outside Utah. Applying the ordinary meaning, we must hold that the instruction was erroneous and prejudicial to the plaintiffs.
 
 
 9
 The contracts of the nature here concerned are somewhat unusual in the ordinary investment markets but apparently have been used in other instances pertaining to the raising of various kinds of fur-bearing animals, and also to the sale of interests in citrus groves. See S.E.C. v. Pane, 35 F.Supp. 873 (S.D.N.Y.); S.E.C. v. W. J. Howey Co., 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244, and S.E.C. v. C. M. Joiner Corp., 320 U.S. 344, 64 S.Ct. 120, 88 L.Ed. 88. It is apparent that the question would arise as to whether or not the agreements relate only to the sale of the beavers in this instance, or whether the contracts were somewhat broader and constituted an investment contract or investment agreement or a security for the purpose of the federal regulatory Acts.
 
 
 10
 This court in Continental Marketing Corp. v. S.E.C., 387 F.2d 466 (10th Cir.), considered contracts very similar, if not identical, to the ones here concerned. The contracts there were also for the sale, care, management, replacement or resale of live beaver. The issue arose on an injunction proceeding to prevent the sale of such contracts. Mark Weaver, a defendant here, was a defendant in the cited case. This court there held that the contracts were 'investment contracts' within the meaning of the Securities Exchange Act of 1934 (15 U.S.C. 78c(a)(10)) and the Securities Act of 1933 (15 U.S.C. 77b(1)), and the question is there fully considered.
 
 
 11
 The nature of the contracts here concerned and the applications of the Securities Acts as the issue here arose before the trial court was a question of law and not of fact. Since the question whether the beaver contracts were 'investment contracts' within the Acts was submitted to the jury by the trial court, we must reverse.
 
 
 12
 The plaintiffs requested an instruction on the responsibility of certain of the defendants for statements made by their salesmen and other agents to the plaintiffs. The record contains many statements made by several salesmen employed by the defendants, or some of them, to sell the beaver contracts. There is no question but that the salesmen were agents of their employers, and the plaintiffs were entitled to an instruction on the employers' responsibility for such statements. It was error not to have instructed on this issue.
 
 
 13
 In view of the need for a new trial, the several other issues presented need not be considered.
 
 
 14
 The case is reversed and remanded for a new trial in accordance with this opinion.