**William C. STRAUB and Joanne R. Wickersham, Plaintiffs–Appellants,**

v.

**MOUNTAIN TRAILS RESORT, INC., a Colorado corporation, Thomas D. Warren, a/k/a Tom Warren, Ira Brawer, a/k/a Ira E. Brawer, Delmar Schroeder, a/k/a Delmar H. Schroeder, individually, Defendants–Appellees.**

No. 86CA0633.

Colorado Court of Appeals,
Div. IV.

Nov. 21, 1988.

As Modified on Denial of Rehearing
Dec. 22, 1988.

Certiorari Denied March 13, 1989.

Law Offices of Daniel W. Dean, Daniel W. Dean, Fort Collins, for plaintiffs-appellants.

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const., art. VI, Sec. 5(3), and § 24–51–607(5), C.R.S. (1982 Repl.Vol. 10).

C. Jean Smollett, Denver, for defendants-appellees.

JONES, Judge.

In this promissory note and securities fraud case, plaintiffs, William C. Straub and Joanne R. Wickersham, appeal the judgment entered against them. We affirm.

The plaintiffs, along with two other partners, owned the Blue Arrow Campground. Pursuant to an agreement dated March 1, 1982, plaintiffs agreed to sell the campground to defendant, Mountain Trails Resorts, Inc., a corporation, the officers and directors of which were the individual defendants, Thomas Warren, Ira Brawer, and Delmar Schroeder.

The terms of the agreement called for payment of $1,500,000 payable by a promissory note of $5,000 as earnest money; $95,000 cash at closing; a promissory note to plaintiffs and their partners for $50,000, with interest at 18% per annum; and approximately $443,500, to be paid by way of defendants' assumption of plaintiffs' contract for deed with their original mortgagor (lender). The balance of the purchase price, totaling approximately $906,500 was to be paid by four promissory notes due on or before five years after closing, and bearing interest at 12% per annum, payable annually.

All promissory notes from defendants to plaintiffs were secured by campground equipment and memberships that were to be sold in a campground association. It was anticipated that a sufficient number of memberships would be assigned as collateral so that each dollar of defendants' debt would be secured by three dollars of membership value. Ultimately, an escrow agreement was drafted which required 495 memberships to be placed in escrow.

Defendants were to have formed a campground association to sell the memberships. The association was not formed, however, and an organization which defendants contracted with to sell the memberships sold very few before becoming defunct.

The memberships provided only for the members' use and enjoyment of the campground for a specified number of days, as reserved each year, subject to availability. They did not entitle a member to own an interest in real estate or profits. By their express terms, the membership certificates stated that the memberships were not for investment or profit, and did not generate income, dividends, or profits. Also, because the escrow in which the memberships were to be held had no provision for distribution of its contents to plaintiffs, they had no right to the memberships unless defendant defaulted on the purchase price, and had no rights to profits from the memberships or from the campground itself. Their principal interest in the memberships could only be realized upon redemption of the property on foreclosure if defendants defaulted.

Defendants defaulted both as to the underlying lender and as to plaintiffs. The original lender foreclosed and, when plaintiffs failed to redeem, took possession of the campground.

Plaintiffs sued the corporate defendants on the promissory notes. They sued the individual defendants for improper sale of a security under Colorado law, and on an alter ego theory, for individual liability on the notes. The trial court directed verdicts in favor of plaintiffs and against the corporate defendants as to the promissory notes. Plaintiffs' other claims were dismissed upon directed verdicts. This appeal followed.

## I.

Plaintiffs first contend that the trial court erred in concluding that the campground memberships pledged as security for the purchase price of the campground were not "investment contracts", and thus, not securities under the Colorado Securities Act of 1981. Section 11–51–102(14), C.R.S. (1987 Repl.Vol. 4B). We disagree.

■ A "security" under the Colorado act includes an investment contract to the

same extent that an investment contract is a security under the Securities Act of 1933, 15 U.S.C. § 77b(1) (1970). Colorado has, thus, adopted the federal test to determine whether a given interest is an investment contract under the Colorado act. *See Lowery v. Ford Hill Investment Co*, 192 Colo. 125, 556 P.2d 1201 (1976); *Raymond Lee Organization Inc. v. Division of Securities*, 192 Colo. 112, 556 P.2d 1209 (1976). These cases adopt the benchmark test to determine whether an interest or instrument constitutes an investment contract as stated in *SEC v. W.J. Howey Co.*, 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946):

> "[A]n investment contract for purposes of the Securities Act means a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party...."

█ Whether an interest or instrument is an investment contract is a question of law to be determined by the court. *Ahrens v. American Canadian Beaver Co.*, 428 F.2d 926 (10th Cir.1970). Here, the trial court properly concluded that the campground memberships do not constitute investment contracts because the *Howey* test was not satisfied.

The memberships do not have the attributes of an investment. Members expected no profits from the memberships. Rather, members expected only personal use of the campground. *All Seasons Resorts v. Abrams*, 68 N.Y.2d 81, 506 N.Y.S.2d 10, 497 N.E.2d 33 (1986); *Cf. Raymond Lee Organization Inc. v. Division of Securities, supra; Lowery v. Ford Hill Investment Co., supra.*

Because the memberships do not have the attributes of an investment, and the members did not expect a profit, the circumstances of this case cannot meet the *Howey* test for an investment contract. Therefore, we need not consider the "common enterprise" element of that test.

Hence, the trial court properly dismissed the claims alleging improper sale of a se-

curity under the Colorado Securities Act. *See All Seasons Resorts v. Abrams, supra* (selling of memberships in outdoor recreational campgrounds did not involve an investment contract).

## II.

Plaintiffs also contend that the corporation had no real existence and was solely an alter ego for the individual defendants. Hence, they argue that the trial court erred in ruling that the corporate veil could not be pierced, and that they could not seek recovery on the promissory notes against the individual defendants. We disagree.

At the conclusion of the evidence, in response to a motion for directed verdict, the trial court ruled that "on the Fifth Cause of Action ... piercing the corporate veil, the court will rule, as a matter of law, that Mountain Trails Resort, Inc. was a corporation as of March 15, 1982, at the time of the execution of the actual contract. So that cause of action will not go to the jury."

█ The issue of whether the corporate veil can be pierced is equitable and, thus, there was no right to a jury trial as to that issue. *See Sonne v. Sacks*, 314 A.2d 194 (Del.Supr.1973); *American Petroleum Exchange v. Lord*, 399 S.W.2d 213 (Tex.Civ. App.1966). However, the issue before us is whether, for purposes of liability, the corporate entity should be disregarded.

There is no dispute that the corporation was in existence at the time of closing. *Masinton v. Dean*, 659 P.2d 50 (Colo.App. 1982); § 7–2–104, C.R.S. The individual defendants were officers and shareholders of the corporation, and were authorized to act on the corporation's behalf. *See* § 7–3–104, C.R.S.; *cf. Billings v. Micciche*, 691 P.2d 1155 (Colo.App.1984). Moreover, plaintiffs, as third parties, were given notice that defendants had authority to act on behalf of an identified corporate entity. *See Fink v. Montgomery Elevator Co.*, 161 Colo. 342, 421 P.2d 735 (1966).

Additionally, the record reflects that the corporation, through its duly appointed of-

ficials: capitalized itself to a level sufficient for start-up costs and to up-grade and remodel the campground through shareholders' assets and by borrowing; maintained books and records; entered into service contracts; contracted for debt and paid debts; received moneys due on debts owing to it; and that all of these activities were done with notice to plaintiffs. Furthermore, the disbursement of memberships to the individual defendants, to pay corporate debts to them as shareholders, was done with notice to plaintiffs, and with their agreement, before the closing. Thus, such disbursements are not evidence of the corporation as an alter ego of the individual defendants. *See Masinton v. Dean, supra.* Under these circumstances, defendants are not personally liable.

■ Plaintiffs raised the alter ego doctrine to show that the corporation was a shell for the individual defendants' use, and the court was on notice as to the claim. The record reflects that plaintiffs failed to sustain their claim. *See Masinton v. Dean, supra.* Thus, the trial court's inferential holding, rejecting the alter ego doctrine, is supported by the evidence and will not be overturned on review. *See Page v. Clark,* 197 Colo. 306, 592 P.2d 792 (1979).

We also conclude that, while they were raised in a losing cause, plaintiffs' contentions did not lack the support of rational argument based on fact or law, and were not interposed for the sole purpose of harassment or delay. Hence, the requests of defendants for sanctions pursuant to C.A.R. 38 are denied. *See Price v. Conoco Inc.,* 748 P.2d 349 (Colo.App.1987).

The judgment is affirmed.

BABCOCK and CRISWELL, JJ., concur.