The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
June 4, 2020

**2020COA87**

**No. 18CA1769, *Chan v. HEI Resources* — Financial Institutions
— Securities — Colorado Securities Act — Investment
Contracts; Business Organizations — General Partnerships**

A division of the court of appeals holds that when deciding

whether an ostensible general partnership interest in a venture is a

security under the Colorado Securities Act, the court must employ a

strong presumption that it is not.  The division also holds that when

determining whether the general partners have sufficient experience

with or knowledge of business affairs that they can intelligently

exercise their partnership powers, venture-specific experience or

knowledge should not always be regarded as required: general

business experience and knowledge may be sufficient.  In so

holding on these two issues, the division disagrees with the prior

court of appeals decision in this case, *Rome v. HEI Resources, Inc.*,

2014 COA 160.

COLORADO COURT OF APPEALS                      **2020COA87**

Court of Appeals No. 18CA1769
City and County of Denver District Court No. 09CV7181
Honorable Michael A. Martinez, Judge

Tung Chan, Securities Commissioner for the State of Colorado,

Plaintiff-Appellee and Cross-Appellant,

v.

HEI Resources, Inc., f/k/a Heartland Energy, Inc.; Charles Reed Cagle;
Brandon Davis; Heartland Energy Development Corporation; John Schiffner;
and James Pollak,

Defendants-Appellants and Cross-Appellees.

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division V
Opinion by JUDGE J. JONES
Welling and Hawthorne*, JJ., concur

Announced June 4, 2020

Philip J. Weiser, Attorney General, Robert Finke, First Assistant Attorney
General, Charles J. Kooyman, Senior Assistant Attorney General, Denver,
Colorado, for Plaintiff-Appellee and Cross-Appellant

Thomas Law LLC, Jeffrey R. Thomas, Denver, Colorado for Defendants-
Appellants and Cross-Appellees HEI Resources, Inc. and Charles Reed Cagle

Holland & Hart, LLP, Marcy G. Glenn, Denver, Colorado; Munck Wilson
Mandala LLP, Shain A. Khoshbin, S. Wallace Dunwoody, Chase A. Cobern,
Dallas, Texas; Munck Wilson Mandala LLP, Jennifer D. Jasper, Austin, Texas,
for Defendants-Appellants Brand Davis and Heartland Energy Development
Corporation

Law Offices of Otto K. Hilbert II, Otto K. Hilbert, II, Denver, Colorado, for Defendants-Appellants John Schiffner and James Pollak

Robinson Waters & O'Dorisio, P.C., Tracy L. Ashmore, Denver, Colorado, for Amicus Curiae National Federation of Independent Business

Ballard Spahr LLP, Theodore J. Hartl, Denver, Colorado; Kameron Hillstrom, Washington, D.C., for Amicus Curiae North American Securities Administrators Associations, Inc.

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2019.

¶ 1     Plaintiff, Tung Chan, in his official capacity as Securities Commissioner for the State of Colorado, brought this enforcement action against defendants, HEI Resources, Inc. (HEI), f/k/a Heartland Energy, Inc.; Heartland Energy Development Corporation (HEDC); Charles Reed Cagle; Brandon Davis; John Schiffner; and James Pollack, for allegedly violating the Colorado Securities Act (CSA) in forming several oil and gas exploration and drilling joint ventures. The gist of the Commissioner's position is that, notwithstanding that the investors are designated general partners in the joint ventures, their interests are securities (specifically, investment contracts) under the CSA and defendants violated certain requirements of the CSA when offering those interests.

¶ 2     In 2013, following a partial summary judgment and a trial, the trial court found that the joint venture interests aren't investment contracts and therefore aren't securities under the CSA. The court reached that conclusion after applying the leading case in this field, *Williamson v. Tucker*, 645 F.2d 404 (5th Cir. 1981), which identifies three ways in which a party can overcome a strong presumption

1

(the so-called "*Williamson* presumption") that a general partnership interest isn't an investment contract (the *Williamson* tests).[1]

¶ 3    The Commissioner appealed, and a prior division of this court reversed and remanded. *Rome v. HEI Res., Inc.*, 2014 COA 160 (*HEI I*). The division concluded that the *Williamson* presumption doesn't apply in an action under the CSA and that the trial court erred by considering the partners' general, rather than venture-specific, business experience under the second *Williamson* test. The division remanded to the trial court

> for redetermination of whether the joint venture interests are securities under the second and third *Williamson* factors and any other 'catch-all' economic realities, taking into consideration our rejection of the strong presumption that general partnership interests are not securities and our determination that

---

[1] As discussed more fully below, the *Williamson* tests are (1) whether the parties' agreement leaves so little power to the partners that they are in reality limited partners; (2) whether the partner has so little experience with and knowledge of business affairs that he can't intelligently exercise his powers; or (3) whether the manager has such unique entrepreneurial or managerial skills that he is, as a practical matter, irreplaceable.

> the relevant measure of business experience is experience in the business of the venture.

*Id.* at ¶ 61.[2]

¶ 4     On remand, the trial court first determined that the general partners' interests are investment contracts under the second and third *Williamson* tests and "other economic realities."  After taking additional evidence, the court later ruled that defendants had violated the CSA, enjoined them from engaging in securities-related activities in Colorado, and ordered certain defendants to pay restitution to the Commissioner.

¶ 5     This time, both sides appeal — the Commissioner by way of cross-appeal.[3]  Though the parties raise a host of issues, we only need to address four raised by defendants: (1) whether the prior division erroneously departed from well-established federal securities law by rejecting the *Williamson* presumption; (2) whether

---

[2] The prior division referred to the *Williamson* tests as "exceptions" or "factors."  We refer to them as tests because they are independent bases for analyzing whether a general partnership interest is an investment contract.

[3] The Commissioner cross-appeals one aspect of the trial court's liability determinations and several aspects of the trial court's remedial rulings.  But in light of our resolution of defendants' appeal, we don't need to address those issues.

the prior division erroneously held that the partners must have venture-specific experience under the second *Williamson* test; (3) whether the trial court improperly focused on whether the partners *themselves* could fill the role of the managing partner under the third *Williamson* test; and (4) whether the trial court erred by finding that the general partners' interests are investment contracts under "other economic realities."

¶ 6     For the reasons explained below, we agree with defendants that, contrary to the prior division's holding, the *Williamson* presumption applies when general partnership interests are alleged to be investment contracts under the CSA.  We also agree with defendants, again contrary to the prior division's holding, that a collective lack of venture-specific experience isn't dispositive under the second *Williamson* test; it is relevant, but what ultimately matters is whether the partners have sufficient collective knowledge and experience to intelligently exercise their powers.  And we conclude that under the third *Williamson* test the question isn't whether any of the general partners themselves could, if necessary, fill the role of the managing partner, but whether the managing partner is, considering the nature of the venture and the managing

4

partner's knowledge and experience, essentially irreplaceable. These three conclusions are consistent with prevailing federal law applying corresponding federal statutes, which the General Assembly and the Colorado Supreme Court have expressly directed us to follow unless inconsistent with the purposes and provisions of the CSA. Lastly, we conclude that, although the three *Williamson* tests aren't exclusive, those tests account for economic realities, and the court should consider *other* economic realities only if they aren't adequately accounted for under the *Williamson* tests.

¶ 7 Accordingly, cognizant of our decision's whiplash effect, but nevertheless convinced that the prior division's decision is out of step with the applicable law, we reverse and remand to the trial court to determine, consistent with this opinion, whether the joint venture interests constitute investment contracts, based on the record developed to date.

## I. Background

¶ 8 Much of the relevant background is recounted in *HEI I*. The following, however, should give the reader enough to understand how we got to where we are now.

## A. Historical Facts

¶ 9    Beginning in 2004, defendants solicited thousands of, in the trial court's words, "wealthy, educated and sophisticated investors" nationwide by, in large part, cold-calling them and offering them interests in several oil and gas exploration and drilling joint ventures. If someone expressed interest in participating as a partner in a venture, they were sent an information package that included a "Confidential Information Memorandum" (CIM) and a "Joint Venture Agreement" (JVA).[4] All parties acknowledge that, under the terms of the JVA, the joint ventures were organized as general partnerships under the Texas Revised Partnership Act, and that the partners ostensibly have significant management rights and responsibilities, such as the rights to call meetings, propose agenda items, access partnership records, receive business information, remove the managing partner, change the managing partner's powers, and otherwise actively run the business by majority vote. The JVA also says the partners are jointly and

---

[4] These documents didn't differ materially (for our purposes) from venture to venture.

severally liable for any joint venture liabilities. The CIM delegates the venture's day-to-day operations to either HEI or HEDC as the initial "managing venturer."

## B. Litigation

¶ 10 In 2009, the Commissioner filed a complaint against defendants, alleging that they had violated the CSA by employing unlicensed sales representatives to offer and sell unregistered securities.

¶ 11 The court granted summary judgment for defendants on the first *Williamson* test in 2011. Two years later, after a seven-day trial, the trial court found that the joint venture interests aren't investment contracts, and therefore aren't securities, under the CSA. Specifically, the court ruled that the Commissioner had failed to overcome the *Williamson* presumption by showing that those interests are investment contracts under the second and third *Williamson* tests.

¶ 12 On appeal, as previously discussed, a division of this court reversed and remanded. First, it concluded that the trial court erred by applying the *Williamson* presumption because Colorado hadn't adopted it. The division rejected the *Williamson*

7

presumption, reasoning that (1) the presumption is inconsistent with the governing economic realities test; (2) how the presumption applies is unclear; (3) it is based on a policy judgment, which is for the General Assembly, not the courts, to make; and (4) it isn't necessary because the party claiming that the interests are securities ultimately bears the burdens of proof and persuasion anyway. Second, the division held that the trial court erred by considering the partners' experience in business affairs *generally*, rather than their "collective experience" *specific to the oil and gas exploration and drilling business* under the second *Williamson* test.

¶ 13     On remand, the trial court found that the joint venture interests are investment contracts because (1) the partners are incapable of intelligently exercising their partnership powers due to their relative collective inexperience with oil and gas exploration and drilling operations specifically (the second *Williamson* test); (2) the partners are dependent on HEI and HEDC's unique managerial skills because none of the general partners themselves can capably step into the managing partner's shoes even if they desire a change in managing partner (the third *Williamson* test); and (3) apart from the *Williamson* tests, the economic realities generally so indicate.

Following a second trial, the court went on to find that defendants had violated the CSA and ordered injunctive relief and restitution.

## II.  Discussion

¶ 14     One or more defendants variously contend that the trial court erred by (1) finding that the joint venture interests are securities; (2) finding that the statute of limitations of section 13-80-102(1)(i), C.R.S. 2019, doesn't bar the Commissioner's claims; (3) finding that the safe harbor of section 11-51-704(4), C.R.S. 2019, doesn't immunize defendants from liability; (4) awarding the Commissioner restitution on behalf of out-of-state partners; (5) finding that defendants committed securities fraud by using unlicensed sales representatives to sell unregistered securities; (6) holding defendant Brandon Davis jointly and severally liable for restitution; and (7) granting the Commissioner's request for an "obey-the-law" injunction.  Because we reverse based on the first, threshold issue, we don't address defendants' other contentions.

¶ 15     Defendants present four arguments relating to whether the general partnership interests are investment contracts.  The first two — that the prior division erred by rejecting the *Williamson* presumption and by requiring venture-specific experience under the

second *Williamson* test — and the fourth — that the trial court erred by finding that the interests are investment contracts when looking at the economic realities independent of the *Williamson* test — require us to revisit, to one degree or another, *HEI I*. The third — that the trial court erred by limiting potential replacements of the managing partners to the general partners — wasn't analyzed in *HEI I*. After considering whether the law of the case dictates that we follow *HEI I*, and concluding that it doesn't, we turn to the arguments' merits.

### A.    The Law of the Case

¶ 16    The Commissioner argues that there is no basis under the law of the case doctrine to reconsider *HEI I*. We don't agree.

¶ 17    "The doctrine of the law of the case is a discretionary rule of practice directing that prior relevant rulings made in the same case generally are to be followed." *Mining Equip. Inc. v. Leadville Corp.*, 856 P.2d 81, 85 (Colo. App. 1993). Though the doctrine requires a trial court to follow an appellate court's rulings on remand, *Saint John's Church in the Wilderness v. Scott*, 2012 COA 72, ¶ 8, it "is merely discretionary when applied to a court's power to reconsider its own prior rulings," *Grand Cty. Bd. of Comm'rs v. Colo. Prop. Tax*

*Adm'r*, 2016 COA 2, ¶ 24; *accord People ex rel. Gallagher v. Dist. Court*, 666 P.2d 550, 553 (Colo. 1983); *Saint John's Church in the Wilderness*, ¶ 8.

¶ 18    Indeed,

> a division of [the court of appeals] may review another division's ruling in the same case if there is the possibility that "the previous decision is no longer sound because of changed conditions or law, or legal or factual error, or if the prior decision would result in manifest injustice."

*Grand Cty. Bd. of Comm'rs*, ¶ 24 (quoting *Core-Mark Midcontinent, Inc. v. Sonitrol Corp.*, 2012 COA 120, ¶ 10); *accord Saint John's Church in the Wilderness*, ¶ 8. For the reasons discussed below, reconsideration of the prior division's decision is warranted. We turn, then, to the merits.

### B.    Are the General Partnership Interests Investment Contracts?

#### 1.    Standard of Review

¶ 19    Whether an interest in a venture is an investment contract is a question of law that we review de novo. *HEI I*, ¶ 26; *Joseph v. Viatica Mgmt., LLC*, 55 P.3d 264, 266 (Colo. App. 2002); *Straub v. Mountain Trails Resort, Inc.*, 770 P.2d 1321, 1323 (Colo. App. 1988). We also review de novo the trial court's application of the governing

legal standards to the facts of the case.  *HEI I*, ¶ 26.  But if we need to examine any of the trial court's findings of historical fact, we review them for clear error.  *Id.*

## 2. General Principles

¶ 20    We begin by covering familiar ground.  The Commissioner's complaint hinges on whether the general partnership interests are "investment contracts," a species of security.  *See* § 11-51-201(17), C.R.S. 2019.  Because the CSA doesn't define an "investment contract," Colorado courts apply the three-part test set forth in *Securities & Exchange Commission v. W.J. Howey Co.*, 328 U.S. 293 (1946), as modified by *United Housing Foundation, Inc. v. Forman*, 421 U.S. 837 (1975), cases addressing the meaning of investment contract under federal statute, to determine whether an interest in a venture is an investment contract.  *Toothman v. Freeborn & Peters*, 80 P.3d 804, 811 (Colo. App. 2002).  Under the *Howey* test, "an 'investment contract' is: (1) a contract, transaction, or scheme whereby a person invests his or her money (2) in a common enterprise and (3) is led to expect profits derived from the entrepreneurial or managerial efforts of others."  *Toothman*, 80 P.3d at 811 (citing *People v. Milne*, 690 P.2d 829, 833 (Colo. 1984)).

¶ 21     This definition of investment contract "embodies a flexible rather than a static principle, one that is capable of adaptation to meet the countless and variable schemes devised by those who seek the use of the money of others on the promise of profits." *Id.* (quoting *Howey*, 328 U.S. at 299).  So in determining whether a certain transaction is an investment contract, "the substantive economic realities underlying the transaction" govern over its name or form.  *Viatica Mgmt.*, 55 P.3d at 266; *see Forman*, 421 U.S. at 851-52.  In other words, the label given to a particular interest isn't determinative of whether it is an investment contract.  *See Williamson*, 645 F.2d at 423 ("A scheme which sells investments to inexperienced and unknowledgeable members of the general public cannot escape the reach of the securities laws merely by labelling itself a general partnership or joint venture.").

¶ 22     In this case, the only part of the *Howey* test at issue is the third part — whether the partners were dependent on the managerial efforts of others for their expected profits.  Before getting into the law specifically applicable to that question, we pause to acknowledge the role federal securities law plays when interpreting the CSA.

¶ 23     The Colorado Supreme Court has repeatedly said that while

Colorado courts aren't bound by federal law in interpreting the CSA,

when provisions of the CSA parallel provisions of federal law, the

"federal authorities that interpret provisions parallel to the [CSA]

are highly persuasive." *Milne*, 690 P.2d at 833; *accord, e.g.*, *Cagle v.*

*Mathers Family Tr.*, 2013 CO 7, ¶ 19; *Goss v. Clutch Exch., Inc.*, 701

P.2d 33, 34-35 (Colo. 1985); *Lowery v. Ford Hill Inv. Co.*, 192 Colo.

125, 129-30, 556 P.2d 1201, 1204 (1976).  But that may understate

the degree of deference we should afford federal authorities

construing parallel provisions.  For the General Assembly has said

that "[t]he provisions of [the CSA] and rules made under [the CSA]

shall be coordinated with the federal acts and statutes to which

references are made in [the CSA] and rules and regulations

promulgated under those federal acts and statutes, to the extent

coordination is consistent with both the purposes and the

provisions of [the CSA]." § 11-51-101(3), C.R.S. 2019.  We take this

to mean that if there is a prevailing federal judicial interpretation of

a parallel federal provision, we should follow that interpretation

unless some material difference in language or an underlying

14

purpose or policy of the CSA affirmatively dictates otherwise. *See Cagle*, ¶¶ 20-27 (so applying federal case law).

¶ 24  So what does federal authority have to say about the third *Howey* factor?

¶ 25  In the leading case, *Williamson,* the Fifth Circuit explained that the pertinent economic reality under the third *Howey* prong is whether "the power retained by the investors is a real one which they are in fact capable of exercising." 645 F.2d at 419. Thus, "[s]o long as the investor has the right to control the asset he has purchased, he is not dependent on the promoter or on a third party for 'those essential managerial efforts which affect the failure or success of the enterprise.'" *Id.* at 421 (quoting *Sec. & Exch. Comm'n v. Glenn W. Turner Enters., Inc.*, 474 F.2d 476, 482 (9th Cir. 1973)).

¶ 26  In recognizing that general partnership powers may be illusory, however, the court identified three tests for determining whether purported general partners are, in reality, dependent on the entrepreneurial or managerial skills of others. The party alleging that the interest is an investment contract must establish that

(1) an agreement among the parties leaves so little power in the hands of the partner or venturer that the arrangement in fact distributes power as would a limited partnership; or (2) the partner or venturer is so inexperienced and unknowledgeable in business affairs that he is incapable of intelligently exercising his partnership or venture powers; or (3) the partner or venturer is so dependent on some unique entrepreneurial or managerial ability of the promoter or manager that he cannot replace the manager of the enterprise or otherwise exercise meaningful partnership or venture powers.

*Id.* at 424.[5]  Many federal courts of appeals have expressly adopted these tests.  *See, e.g., Sec. & Exch. Comm'n v. Schooler*, 905 F.3d 1107, 1112 (9th Cir. 2018); *Sec. & Exch. Comm'n v. Shields*, 744 F.3d 633, 644 (10th Cir. 2014); *United States v. Leonard*, 529 F.3d 83, 90-91 (2d Cir. 2008); *Sec. & Exch. Comm'n v. Merch. Capital, LLC*, 483 F.3d 747, 755-66 (11th Cir. 2007); *Stone v. Kirk*, 8 F.3d 1079, 1086 (6th Cir. 1993); *Rivanna Trawlers Unlimited v. Thompson Trawlers, Inc.*, 840 F.2d 236, 241 (4th Cir. 1988).  As has

---

[5] The party claiming that the interest is an investment contract has the burden of proof.  *See, e.g., Sec. & Exch. Comm'n v. Arcturus Corp.*, 928 F.3d 400, 410 (5th Cir. 2019); *Banghart v. Hollywood Gen. P'ship*, 902 F.2d 805, 808 (10th Cir. 1990).

this court.  *See, e.g., HEI I*, ¶ 24; *Feigin v. Dig. Interactive Assocs., Inc.*, 987 P.2d 876, 882 (Colo. App. 1999).

¶ 27    On all this, the parties appear to agree; no party takes issue with *Williamson*'s characterization of the *Howey* test or with the three tests set forth in *Williamson* for determining whether an ostensible general partnership interest is actually an investment contract.[6]  The Commissioner and defendants part company, however, on secondary legal principles that put flesh on the bones of these general precepts.

### 3.    The *Williamson* Presumption

¶ 28    The strong presumption that a general partnership interest isn't an investment contract — the presumption rejected by the division in *HEI I* — derives from the following passage in *Williamson*:

> [A]n investor who claims his general partnership or joint venture interest is an investment contract has a difficult burden to overcome.  On the face of a partnership agreement, the investor retains substantial control over his investment and an ability to protect himself from the managing partner or hired manager.  Such an investor must

---

[6] In 2011, the trial court ruled against the Commissioner on the first *Williamson* test.  The Commissioner didn't cross-appeal that ruling.

> demonstrate that, in spite of the partnership form which the investment took, he was so dependent on the promoter or on a third party that he was in fact unable to exercise meaningful partnership powers.

645 F.2d at 424; *see also id.* at 425 (characterizing the presumption as "an extremely difficult factual burden"). The court said this after surveying federal cases dealing with similar interests; it summed up by saying, "the courts that have ruled on the issue have held that a general partnership or joint venture interest generally cannot be an investment contract under the federal securities acts." *Id.* at 421. Although the court didn't use the word "presumption" (as the *HEI I* division pointed out), the existence of the presumption is the logical conclusion from the court's recognition of a "general" rule and imposition of "an extremely difficult factual burden" to overcome the general rule. Numerous federal circuit courts of appeals, including the Fifth Circuit itself, have so recognized. *See, e.g., Shields*, 744 F.3d at 644; *Merch. Cap., LLC*, 483 F.3d at 755; *Banghart v. Hollywood Gen. P'ship*, 902 F.2d 805, 807-08 (10th Cir. 1990); *Rivanna Trawlers Unlimited*, 840 F.2d at 240-41; *Youmans v. Simon,*

791 F.2d 341, 346 (5th Cir. 1986); *Odom v. Slavik*, 703 F.2d 212, 215 (6th Cir. 1983).[7]

¶ 29     The presumption is justified, these courts say, based on the powers typically granted to general partners.  These often include the powers to participate in the management and control of the partnership, act on behalf of the partnership, bind the partnership by their actions, remove a managing partner or entity, and dissolve the partnership.  General partners are also individually liable for the partnership's liabilities.  *Sec. & Exch. Comm'n v. Arcturus Corp.*, 928 F.3d 400, 410 (5th Cir. 2019); *Youmans*, 791 F.2d at 346; *Williamson*, 645 F.2d at 421-22.

¶ 30     And because these partnership powers provide general partners with leverage and the ability to protect themselves, "[a]n investor who is offered an interest in a general partnership or joint venture should be on notice . . . that his ownership rights are significant, and that the federal securities acts will not protect him

---

[7] As have state courts, including the Colorado Court of Appeals. *See, e.g., Joseph v. Mieka Corp.*, 2012 COA 84, ¶ 17; *Ak's Daks Commc'ns, Inc. v. Md. Sec. Div.*, 771 A.2d 487, 497 (Md. Ct. Spec. App. 2001); *State v. Kramer*, 804 S.W.2d 845, 848 (Mo. Ct. App. 1991).

from a mere failure to exercise his rights." *Williamson*, 645 F.2d at 422.

¶ 31    Recently, the Fifth Circuit summed up the rationale for the *Williamson* presumption as follows:

> [P]artners in a general partnership can guard "their own interests" with their "inherent [partnership] powers" and do not need protection from securities laws — they can "act on behalf of the partnership"; "bind their partners by their actions"; "dissolve the partnership"; and "are personally liable for all liabilities of the partnership." General partners are, in short, "entrepreneurs, not investors."

*Arcturus*, 928 F.3d at 410 (citation omitted).[8]

---

[8] Another division of this court has expressed a similar rationale for the presumption:

> A general partnership provides its partners with an equal right in the management and conduct of the partnership business, and general partners are jointly and severally liable for the obligations of the general partnership. *See* §§ 7-60-115(1), 7-60-118(1), C.R.S. 2002. The *Williamson* ruling adheres to these principles in that a partnership interest is presumed not to be an investment contract to the extent that partners have a legal right to participate in the management of the partnership.

*Toothman v. Freeborn & Peters*, 80 P.3d 804, 812 (Colo. App. 2002).

¶ 32    This strong presumption that general partnership interests aren't investment contracts is widely applied by federal and state courts alike. *See, e.g., Schooler*, 905 F.3d at 1112; *Shields*, 744 F.3d at 643; *Rivanna Trawlers Unlimited*, 840 F.2d at 242;[9] *Gordon v. Terry*, 684 F.2d 736, 741 (11th Cir. 1983); *Slavik*, 703 F.2d at 215; *Sec. & Exch. Comm'n v. Shiner*, 268 F. Supp. 2d 1333, 1340-44 (S.D. Fla. 2003); *Great Lakes Chem. Corp. v. Monsanto Co.*, 96 F. Supp. 2d 376, 391 (D. Del. 2000); *Sec. & Exch. Comm'n v. Telecom Mktg., Inc.*, 888 F. Supp. 1160, 1165 (N.D. Ga. 1995); *Kline Hotel Partners v. Aircoa Equity Interests, Inc.*, 725 F. Supp. 479, 481 (D. Colo. 1989); *Power Petroleum, Inc. v. P & G Mining Co., Inc.*, 682 F. Supp. 492, 493-94 (D. Colo. 1988); *Roark v. Belvedere, Ltd.*, 633 F. Supp. 765, 767 (S.D. Ohio 1985); *McConnell v. Frank Howard Allen*

---

[9] Contrary to the division's assertion in *Rome v. HEI Resources, Inc.*, 2014 COA 160, ¶ 35 (*HEI I*), the Fourth Circuit hasn't "inconsistently applied *Williamson*," at least when it comes to general partnership interests. The case the division cited that didn't apply the presumption, *Bailey v. J.W.K. Props., Inc.*, 904 F.2d 918 (4th Cir. 1990), dealt with an enterprise that "did not involve the formal structure and protection of a general partnership." *Id.* at 923 (distinguishing the contracts before the court from the general partnership interests at issue in *Rivanna Trawlers Unlimited v. Thompson Trawlers, Inc.*, 840 F.2d 236 (4th Cir. 1988)).

21

*& Co.*, 574 F. Supp. 781, 786 (N.D. Cal. 1983); *Westlake v. Abrams*, 565 F. Supp. 1330, 1343 (N.D. Ga. 1983); *Nutek Info. Sys., Inc. v. Ariz. Corp. Comm'n*, 977 P.2d 826, 830 (Ariz. Ct. App. 1998); *Corp. E. Assocs. v. Meester*, 442 N.W.2d 105, 107 (Iowa 1989); *Ak's Daks Commc'ns, Inc. v. Md. Sec. Div.*, 771 A.2d 487, 497 (Md. Ct. Spec. App. 2001); *Bahre v. Pearl*, 595 A.2d 1027, 1031 (Me. 1991); *Russell v. French & Assocs., Inc.*, 709 S.W.2d 312, 314 (Tex. App. 1986).[10]

¶ 33     Indeed, apart from one case taking an even more extreme view of general partnership interests as shielded from the securities laws, we haven't found any published decision of any court holding that there is no such presumption: the *Williamson* presumption is prevailing federal law.[11]  This makes *HEI I* a true outlier.  And given

---

[10] The *Williamson* presumption isn't without critics.  *See* Kenneth L. MacRitchie, *General Partnerships and Similar Interests as "Securities" Under Federal and State Law*, 32 Lincoln L. Rev. 29 (2004-2005); J. William Callison, *Changed Circumstances: Eliminating the* Williamson *Presumption that General Partnership Interests are Not Securities*, 58 Bus. Law. 1373 (Aug. 2003).  But it apparently hasn't waned in popularity despite that criticism.

[11] The Third Circuit follows a *stricter* approach.  If a general partnership agreement gives the usual general partnership powers to the general partners, then the partnership "interest does not qualify as a security primarily because the role of a general partner, *by law*, extends well beyond the permitted role of a passive investor."  *Goodwin v. Elkins & Co.*, 730 F.2d 99, 103 (3d Cir. 1984).

that we must coordinate Colorado securities law with federal securities law, and that the Commissioner points to no purpose or policy of the CSA counseling otherwise in this context, we conclude that the *HEI I* division erred by rejecting the *Williamson* presumption. *See* § 11-51-101(3); *Cagle*, ¶ 27.

¶ 34 Nonetheless, the Commissioner argues that because Colorado courts have departed from federal law in the securities context, we should do so here. He cites only *Viatica Management* in support. In that case, the division concluded that units in a trust were investment contracts because the investors who bought the units "relied entirely" on the managerial efforts of others for profits. 55 P.3d at 267. But contrary to the Commissioner's assertion, the division didn't reject any interpretation of federal law; it held that the case's facts were distinguishable from those in the federal case on which the defendant relied. *Id.* at 266-67; *see Cagle*, ¶ 26 (recognizing this basis for the holding in *Viatica Management*). And in any event, as we have just noted, the Commissioner doesn't point to anything in the language of the CSA, or any policy underlying it, that dictates a course different from the one federal courts have charted for analyzing general partnership interests.

¶ 35    That could be the end of the matter.  But we nevertheless address *HEI I*'s four stated reasons for rejecting the presumption.

### a.    Economic Realities

¶ 36    The prior division concluded that applying the presumption "is contrary to Colorado and federal law that requires courts to look at substantive economic realities, not form."  *HEI I*, ¶ 41.  But the *Williamson* presumption reflects the economic realities of being a general partner; that status ordinarily carries with it considerable legal rights to control the venture.  *See Williamson*, 645 F.2d at 424 ("So long as the investor retains ultimate control, he has the power over the investment and the access to information about it which is necessary to protect against any unwilling dependence on the manager."); *Dig. Interactive*, 987 P.2d at 881 (expressly recognizing that the *Williamson* framework is based on "economic reality").

¶ 37    Courts applying the *Williamson* presumption don't see any tension between it and the requirement to consider economic realities.  To the contrary, they expressly acknowledge that economic realities control and see the presumption, and the tests that may be used to try to overcome it, as consistent with such realities.  *See, e.g., Arcturus*, 928 F.3d at 410-11; *Youmans*, 791

24

F.2d at 345-46; *Slavik*, 703 F.2d at 216; *Telecom Mktg.*, 888 F.
Supp. at 1165; *Roark*, 633 F. Supp. at 767; *McConnell*, 574 F.
Supp. at 785-86; *Meester*, 442 N.W.2d at 107.

### b.    Applying the Presumption

¶ 38    The prior division said that it isn't clear how courts are supposed to apply the presumption because "no court has articulated the presumption in a manner that enables trial courts to reliably apply" it. *HEI I*, ¶ 42.  But courts across the country have been applying the presumption for decades, and we haven't found any cases expressing difficulty in applying it.  Presumptions aren't uncommon in the law (as *HEI I* notes).  We don't think it likely that courts would have any difficulty applying this one.  At bottom, it sets a high burden of factual proof for the one seeking to overcome it, and thus the inquiry ultimately comes down to whether the degree of control possessed by the ostensible general partners is real or illusory.  Trial courts are perfectly capable of making such judgments.

### c.    Policy Judgment

¶ 39    The prior division also said that, because "the resolution of what weight a presumption has and whether it disappears upon

presentation of sufficient rebuttal evidence depends on policy judgments," it is the General Assembly's prerogative to decide if it applies. *Id.* at ¶ 45. The General Assembly, however, has made a policy judgment: the CSA "*shall* be coordinated" with federal securities law "to the extent coordination is consistent with both the purposes and the provisions of this article." § 11-51-101(3) (emphasis added). And the supreme court has held that the CSA's purposes and provisions align with those of the federal securities acts. *Cagle*, ¶ 24. To put a finer point on it, the General Assembly has made a policy judgment to follow federal law, and the presumption is prevailing federal law. *See id.* at ¶¶ 20-27 (following federal case law interpreting federal statutes when interpreting the CSA).

### d.     Necessity of the Presumption

¶ 40     The prior division believed that the presumption is "wholly unnecessary" because the party alleging that a general partnership interest is an investment contract carries the burden of proof and persuasion anyway. *HEI I*, ¶¶ 47-48. But the presumption provides a degree of certainty that is essential for business transactions. In forming or joining a general partnership, partners

26

are put on notice that, so long as the partners' powers are real, the securities laws won't protect them, *see Arcturus*, 928 F.3d at 413 (the joint venture agreements "clearly state that the venture is not a security, putting the investors 'on notice' that 'federal securities acts' will not protect them" (quoting *Williamson*, 645 F.2d at 422)), and the presumption also gives promoters notice of the regulatory requirements with which they must comply.  In addition, the presumption serves as a guard-rail in assuring that securities laws aren't turned into general antifraud provisions allowing general partners to sue their copartners or the managers for alleged securities violations.  *See Goodwin v. Elkins & Co.*, 730 F.2d 99, 113 (3d Cir. 1984) ("[T]he federal securities laws are not properly invoked to protect one general partner from the deceit of his copartners.") (Seitz, C.J., concurring); *see also Landreth Timber Co. v. Landreth*, 471 U.S. 681, 690 (1985) (the federal securities acts are intended to protect "passive" investors, not "active entrepreneur[s]"); *Marine Bank v. Weaver*, 455 U.S. 551, 556 (1982)

("Congress, in enacting the securities laws, did not intend to provide a broad federal remedy for all fraud.").[12]

¶ 41    In sum, we conclude that where the parties' agreement purports to give participants rights typical of those possessed by a general partner, *see Shields*, 744 F.3d at 644, there is a strong presumption that the general partnership interests aren't investment contracts. Because it is undisputed that the JVA gives partners partnership powers, the *Williamson* presumption applies in this case.

¶ 42    The trial court, bound of course by *HEI I*, didn't apply the presumption. We therefore reverse the trial court's judgment and remand for reconsideration. On remand, the court must make factual findings as to whether the interests are investment

---

[12] In fact, this case shows how the *Williamson* presumption can make a difference. Applying the presumption, the trial court found that the general partnership interests aren't investment contracts. On remand, following the prior division's direction not to apply the presumption, the trial court found, on the same record, that the general partnership interests are investment contracts.

contracts under the second and third *Williamson* tests, applying the presumption, and based on the existing record alone.[13]

¶ 43    We next examine other relevant legal principles that must guide the court in addressing the second and third *Williamson* tests.

### 4.    Relevant Business Experience

¶ 44    In *HEI I*, the division held that under the second *Williamson* test "there *must* be substantial collective experience in the specific business of the venture such that the partners, as a whole, need not rely solely on the promoters or third parties for the success of the venture or to meaningfully exercise their partnership powers." *HEI I*, ¶ 58 (emphasis added).  On remand, the trial court found that the general partners collectively lacked venture-specific experience.  (Before the first appeal, the trial court found that the general partners had sufficient general business experience to protect their interests by meaningfully exercising their powers.)

---

[13] We realize that the trial court did this once before in 2013.  But the court on remand took evidence in determining liability and remedies that may bear on these issues.  And the court didn't have the benefit of the guidance set forth below relating to the second and third tests.

Defendants contend that the *HEI I* division erred by requiring collective venture-specific experience. We agree.

¶ 45 In *Williamson*, the Fifth Circuit said that the relevant inquiry under the second test is whether "the partner or venturer is so inexperienced and unknowledgeable in *business affairs* that he is incapable of intelligently exercising his partnership or venture power." 645 F.2d at 424 (emphasis added). True, the Fifth Circuit, in *Long v. Schultz Cattle Co.*, 881 F.2d 129, 134 n.3 (5th Cir. 1989), later said that "the knowledge inquiry must be tied to the nature of the underlying venture." But that isn't the same as saying that the venture-specific experience is required. Rather, it means only that "the investors' expertise must be considered in relation to the nature of the underlying venture." *Id.* at 135.[14]

¶ 46 The Fifth Circuit much more recently addressed this issue in *Arcturus*. In discussing this statement from *Long* (a case which didn't even involve a general partnership), the court said, "[t]his

---

[14] In a post-*Long* decision, the Fifth Circuit pointed out that *Long* didn't involve a joint venture, and therefore the interests in that case didn't enjoy the presumption of active involvement. *Nunez v. Robin*, 415 F. App'x 586, 591 (5th Cir. 1991).

requirement . . . should *not* be read to suggest that investors necessarily need a specialized background. If the evidence shows that an investor can intelligently control his investment, then courts do not require specialized experience." *Arcturus*, 928 F.3d at 417-18 (emphasis added).

¶ 47    So although venture-specific experience is unquestionably relevant, it isn't necessarily required. What matters is whether, considering the nature of the business, the partners collectively possess sufficient knowledge and experience to intelligently exercise their powers. *See, e.g.*, *Robinson v. Glynn*, 349 F.3d 166, 170-72 (4th Cir. 2003) (specialized experience wasn't required where investor, "a savvy and experienced businessman," showed he was capable of managing his investment); *Holden v. Hagopian*, 978 F.2d 1115, 1121 (9th Cir. 1992) (rejecting argument that partners weren't able to intelligently exercise their partnership powers because they lacked specialized experience and stating that, instead, "[t]he proper inquiry is whether the partners are inexperienced or unknowledgeable in 'business affairs' generally"); *Koch v. Hankins*, 928 F.2d 1471, 1479 (9th Cir. 1991) ("While it is undisputed that none of the investors had prior experience in jojoba

31

farming, that draws the question too narrowly."); *Deutsch Energy Co. v. Mazur*, 813 F.2d 1567, 1570 (9th Cir. 1987) (even though "it appears to be an open question whether sophistication in one field of business will always transfer to another," *Williamson* looks to an investor's "level of general business expertise"); *Youmans*, 791 F.2d at 347 (specialized experience wasn't required where the plaintiff, a physician who invested in real estate projects, had "also engaged in a number of business transactions not connected with [the defendants]"); *Williamson*, 645 F.2d at 425 (specialized experience wasn't required where an investor's experience on the Frito-Lay board was "business experience and knowledge adequate to the exercise of partnership powers in a real estate joint venture").[15]

---

[15] We recognize that *Securities and Exchange Commission v. Shields*, another case on which *HEI I* relied, says that "[t]he experience and knowledge referred to in *Williamson* 'focus[es] on the experience of investors in the particular business, not the general experience of the partners.'" 744 F.3d 633, 647 (10th Cir. 2014) (quoting *Sec. & Exch. Comm'n v. Merch. Capital, LLC*, 483 F.3d 747, 762 (11th Cir. 2007)). But as the Fifth Circuit recently made clear in *Arcturus*, that reading of *Williamson* is incorrect.

¶ 48    Courts have considered the following nonexclusive factors to determine whether the partners possessed sufficient knowledge and experience:

(1)    Do the partners have prior business experience generally? *See Arcturus*, 928 F.3d at 419; *Koch*, 928 F.2d at 1479; *Deutsch Energy Co.*, 813 F.2d at 1570; *Youmans*, 791 F.2d at 347.

(2)    What kind of prior business experience do the partners have, not just as investors but as businesspeople (such as by holding executive positions in organizations)? *See Robinson*, 349 F.3d at 171; *Williamson*, 645 F.2d at 424-25.

(3)    Are the partners otherwise financially sophisticated? *See Arcturus*, 928 F.3d at 420; *Koch*, 928 F.2d at 1479.

(4)    Did the partners represent that they considered themselves experienced in business affairs generally? *See Arcturus*, 928 F.3d at 420; *Holden*, 978 F.2d at 1121.

(5)    Do the partners have prior experience in the same type of enterprise? *See Arcturus*, 928 F.3d at 419; *Deutsch Energy Co.*, 813 F.2d at 1570.

(6)     Is the nature of the venture such that venture-specific experience is essential to enable the partners to intelligently exercise their powers?  *See Koch*, 928 F.2d at 1478-79.

(7)     Did the partners consult advisors or legal counsel for advice or assistance, or have they indicated that they will?  *See Arcturus*, 928 F.3d at 419; *Robinson*, 349 F.3d at 171; *Banghart*, 902 F.2d at 808 n.5; *Rivanna Trawlers Unlimited*, 840 F.2d at 242 n.10; *Deutsch Energy Co.*, 813 F.2d at 1570.

(8)     Did the partners in fact exercise their partnership powers?  *See Arcturus*, 928 F.3d at 419; *Robinson*, 349 F.3d at 171; *Koch*, 928 F.2d at 1474; *Rivanna Trawlers Unlimited*, 840 F.2d at 242; *Casablanca Prods., Inc. v. Pace Int'l Res., Inc.*, 697 F. Supp. 1563, 1567 (D. Or. 1988).

(9)     Did the partners previously invest in one of the defendant's businesses?  *See Arcturus*, 928 F.3d at 420; *Williamson*, 645 F.2d at 425.

(10) How did the partnership acquire its members? *See Arcturus*, 928 F.3d at 418.

(11) To what extent do the partners have meaningful access to information about the venture? *See Sec. & Exch. Comm'n v. Sethi*, 910 F.3d 198, 205 (5th Cir. 2018); *Shields*, 744 F.3d at 648.[16]

¶ 49    On remand, the trial court must make new factual findings under the second *Williamson* test, applying the strong presumption that a general partnership interest isn't an investment contract and analyzing the partners' collective experience under the foregoing factors and any other factors relevant given the nature of the venture.

### 5.    Replaceability of the Manager

¶ 50    Defendants also contend that the trial court erred by misconstruing the third *Williamson* test.[17]  Specifically, they argue that the court erred by narrowly focusing on whether any of the

---

[16] We don't mean to imply that these factors are exclusive. Depending on the circumstances, other facts may be relevant to this inquiry.  Some of these factors, such as access to information, may also be relevant to the analysis under the third *Williamson* test.

[17] The *HEI I* division didn't address the third *Williamson* test.

general partners *themselves* possessed the skills necessary to replace the managing partner (HEI or HEDC); that is, whether any of them could step into the managing partner's shoes. However, it isn't entirely clear from the record if the court, in determining whether the partners were dependent on HEI and HEDC's unique knowledge or abilities, considered only the partners themselves as potential replacements.

¶ 51 We agree with defendants that any such focus would be "too narrow. Under this part of *Williamson,* investors must show that 'there is *no* reasonable replacement' for the manager." *Holden,* 978 F.2d at 1123 (quoting *Williamson,* 645 F.2d at 423). Does the managing partner have "some particular non-replaceable expertise?" *Williamson,* 645 F.2d at 423. Or does the managing partner have some "unique understanding" of the subject of the venture? *Id.* Or does the managing partner have some "unusual experience and ability in running that particular business" without which the venture can't succeed? *Id.* In short, are the partners "so dependent on a particular manager that they cannot replace him or otherwise exercise ultimate control?" *Id.* at 424.

¶ 52    On remand, the trial court should again make findings on this test, applying the strong presumption and taking into account *Williamson*'s caution that what ultimately matters is whether the partners realistically could exercise their power to replace the manager if they wanted to do so.

### 6.    "Catch-All" Economic Realities

¶ 53    On remand, the trial court analyzed whether the interests are investment contracts by looking at "other economic realities" independently of the *Williamson* tests.  It did so because the division in *HEI I* told it to determine whether the "interests are securities under the second and third *Williamson* factors and any other 'catch-all' economic realities."  *HEI I*, ¶ 61.

¶ 54    On appeal, defendants challenge the trial court's findings, arguing that the court "failed to separately evaluate the economic realities evidence that was particular to" the specific joint venture at issue, referred to as LO9, and "gave undue weight to certain facts that, in reality, had little or no bearing on the parties' ability to exercise control."  They also argue that the court's approach was, in certain respects, inconsistent with *Williamson.*

¶ 55     Because the trial court (understandably following *HEI I*) didn't apply the *Williamson* presumption, we must reverse its determination on this issue as well.  To assist the court on remand, we offer the following guidance on the role of "other economic realities" in this context.

¶ 56     In *HEI I,* the division said, "[o]ther economic realities underlying the transaction may also 'give rise to such a dependence on the promoter or manager that the exercise of partnership powers [is] effectively precluded.'"  *Id.* at ¶ 25 (quoting *Williamson*, 645 F.2d at 424 n.15).  We don't quarrel with the *HEI I* division's conclusion that there may be considerations *in addition to* the three *Williamson* tests that bear on whether an ostensible general partnership interest is an investment contract.  *Williamson* said so.  *Williamson*, 645 F.2d at 424 & n.15 (referring to the three tests as "example[s]" and noting that those were "the only factors relevant to the issue that are at all implicated by the facts of this case"); *see also Arcturus*, 928 F.3d at 411.  But if facts — i.e., economic realities — lead to the conclusion that the interests aren't investment contracts under the *Williamson* tests, those same facts shouldn't be repackaged under a "catch-all economic realities" test to reach a

38

contrary conclusion, absent some articulable reason akin to the *Williamson* tests (and consistent with the underlying goal of the *Williamson* tests) to do so. Applying the "catch-all economic realities" in an amorphous way, untethered to the goal of determining whether the general partners' power "is a real one which they are in fact capable of exercising," *Williamson*, 645 F.2d at 419, would significantly impair the utility of the entire *Williamson* framework.

¶ 57    The cases on which *HEI I* relied when discussing the economic realities test — *Digital Interactive*, *Toothman*, and *Joseph v. Mieka Corp.*, 2012 COA 84 — actually don't have much to say about looking outside the *Williamson* tests.

¶ 58    In *Digital Interactive*, the division recognized the three *Williamson* tests and turned immediately to facts — such as who the interests were marketed to and the number of partners — that it thought relevant to those tests. 987 P.2d at 882. So did the division in *Mieka Corp.*, ¶ 20 (looking to "the sophistication and vulnerability of the solicited investors" and the partners' lack of expertise, among other things).

¶ 59    *Toothman* involved a limited liability partnership, not a general partnership, and because of differences in the two forms of enterprise, the division rejected the entire *Williamson* framework. 80 P.3d at 812-13.  Its analysis of various facts therefore says little, if anything, about general partnerships, and certainly doesn't support the notion that a court must always apply a general "other economic realities" test even when the economic realities-based *Williamson* tests are sufficient.

¶ 60    All this is to say that (1) many, perhaps all, of the facts analyzed by the trial court as "other economic realities" are relevant to one or more of the *Williamson* tests and (2) if the economic realities of the case need to be accounted for in some way in which the *Williamson* tests prove inadequate, that needs to be articulated in terms of some relatively concrete principle that will assist the court in deciding whether the partners were "led to expect profits derived from the entrepreneurial or managerial efforts of others." *Toothman,* 80 P.3d at 811; *see Howey,* 328 U.S. at 298-99; *Williamson,* 645 F.2d at 417-18.

### III.    Conclusion

¶ 61    The judgment is reversed and the case is remanded to the trial court to redetermine whether the joint venture interests are investment contracts under the second and third *Williamson* tests, consistent with the views stated herein.  We acknowledge the trial court's commendable efforts in this case.  And we acknowledge that it likely frustrates the court to be instructed to do one thing and then be told to do something else.  But we have a duty to independently examine the appeal's merits notwithstanding the prior division's decision.  Doing so leads us to conclude that the trial court must once more resolve the threshold issue of whether the interests in the joint ventures are investment contracts.[18]

JUDGE WELLING and JUDGE HAWTHORNE concur.

---

[18] We decline defendants' invitation to make this determination in the first instance.